CARIBBEAN PETROLEUM COMPANY, demandante y recurrida, *v.*
DEPARTAMENTO DE HACIENDA, demandada y recurrente.

*Número:* CE-90-907          *Resuelto:* 13 de diciembre de 1993

Jorge E. Pérez Díaz, Procurador General, Anabelle Rodríguez, Subprocuradora General, y Juan R. Deliz Román, Procurador General Auxiliar, abogados de El Pueblo; Julio Nigaglioni Arache, Jorge E. Antongiorgi y Manuel F. Villalón, de Ledesma, Palou & Miranda, abogados de la

recurrida; *Aurelio Torres Ponsa* y *Maggie Correa Avilés*, de *McConnell Valdés, Kelly, Sifre, Griggs & Ruiz Suria*, abogados de la Asociación de Industriales, *amicus curiae.*

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

Mediante petición de *certiorari* recurre ante nos el Departamento de Hacienda y solicita la revocación de una sentencia del Tribunal Superior, Sala de San Juan, la cual ordenó reintegrarle a Caribbean Petroleum Company las sumas retenidas por concepto de arbitrios sobre el destilado liviano (*light distillate*) vendido y entregado a la Autoridad de Energía Eléctrica durante el período comprendido entre octubre de 1987 y febrero de 1990. Confirmamos en parte y revocamos en parte la sentencia recurrida.

I

El 1ro de septiembre de 1987 Caribbean Petroleum Company (en adelante Caribbean Petroleum) suscribió un contrato con la Autoridad de Energía Eléctrica de Puerto Rico (en adelante Autoridad) para suministrarle durante un (1) año el hidrocarburo o derivado de petróleo conocido como destilado liviano, el cual es materia prima para la generación de electricidad.

Para esta fecha, la Autoridad no estaba obligada a pagar los arbitrios sobre el destilado liviano adquirido para generar electricidad. Por un lado, la Sec. 22 de la Ley Núm. 83 de 2 de mayo de 1941, según enmendada, conocida como la Ley de la Autoridad de Energía Eléctrica de Puerto Rico, disponía que:

...la Autoridad no será requerida para pagar ningunas contribuciones o impuestos sobre ninguna de las propiedades adquiridas por ella o bajo su potestad, dominio, posesión o inspección, o sobre sus actividades en la explotación y conservación de

cualquiera empresa; o sobre los ingresos derivados de cualquiera de sus empresas y actividades. 22 L.P.R.A. sec. 212.([1])

Por otro lado, la ley vigente en Puerto Rico en materia de arbitrios conocida como la Ley de Impuestos sobre Artículos de Uso y Consumo de Puerto Rico (en adelante Ley de Arbitrios de 1956), Ley Núm. 2 de 20 de enero de 1956, según enmendada, 13 L.P.R.A. ant. sec. 4001 *et seq.*, disponía: (1) que estarían exentos del pago de impuestos aquellos artículos vendidos localmente "a agencias e instrumentalidades ... del gobierno estatal ... para uso oficial", y (2) que el impuesto sobre el petróleo crudo y otros productos de petróleo no sería aplicable a aquellos que la Autoridad utilizara "para generación de electricidad". 13 L.P.R.A. secs. 4051(a)(4) y 4030C(b)(1) (Sup. 1987).([2])

---

([1]) En su redacción original, la parte pertinente de la Sec. 22(a) de la Ley Núm. 83 de 2 de mayo de 1941, Leyes de Puerto Rico 685, 721, disponía como sigue:

"no se le requerirá [a la entonces denominada Autoridad de las Fuentes Fluviales de Puerto Rico] pagar ningunas contribuciones o impuestos sobre ninguna de las propiedades adquiridas por ella o bajo su potestad, dominio o inspección, o sobre sus actividades en el funcionamiento y conservación de cualquiera empresa; o sobre los ingresos derivados de cualquiera de sus empresas y actividades."

([2]) Con ciertas excepciones, el Art. 37 de la Ley de Impuestos sobre Artículos de Uso y Consumo de Puerto Rico (en adelante Ley de Arbitrios de 1956), Ley Núm. 2 de 20 de enero de 1956, según enmendada, imponía un impuesto de ocho (8) centavos por cada galón o fracción de galón de *gas oil* o *diesel oil* introducido, vendido, consumido, usado, traspasado o adquirido en Puerto Rico. 13 L.P.R.A. ants. secs. 4010 y 4037.

El Art. 30C de la Ley de Arbitrios de 1956 (13 L.P.R.A. ant. sec. 4030C), imponía un arbitrio por el uso en Puerto Rico de petróleo crudo, de productos parcialmente elaborados o de productos terminados derivados del petróleo, y de cualquier otra mezcla de hidrocarburos. Veáse, también, 13 L.P.R.A. ant. sec. 4010. De acuerdo con su inciso (b)(1), el arbitrio no sería aplicable al petróleo crudo o a los productos de petróleo que la Autoridad de Energía Eléctrica (en adelante Autoridad) utilizara para la generación de electricidad. 13 L.P.R.A. ant. sec. 4030C(b)(1). La Asamblea Legislativa añadió este artículo por virtud de la Ley Núm. 5 de 18 de marzo de 1986.

El Art. 51(a)(4) de la Ley de Arbitrios de 1956, por su parte, eximía del pago de impuestos a aquellos "[a]rtículos vendidos localmente por traficantes, fabricantes, representantes o distribuidores, a agencias e instrumentalidades ... del gobierno estatal ... para uso oficial ...". 13 L.P.R.A. sec. 4051(a)(4) (ed.1976). La Asamblea Legislativa añadió esta exención por virtud de la Ley Núm. 6 de 10 de abril de 1970.

. El Secretario de Hacienda estaba autorizado a "devolver cualquier impuesto que se haya pagado sobre la venta, o sobre la introducción de artículos vendidos, a agencias e instrumentalidades ... del gobierno estatal ...". 13 L.P.R.A. sec. 4051(a) (ed. 1976). Este impuesto se debía reintegrar a "la persona o entidad que demuestre al Secretario haber sufrido el peso económico de la contribución y/o a la persona que

Poco más de un (1) mes después de haber otorgado el contrato, la Asamblea Legislativa derogó la Ley de Arbitrios de 1956 mediante la aprobación de la Ley Núm. 5 de 8 de octubre de 1987 (13 L.P.R.A. sec. 7001 *et seq.*), conocida como la Ley de Arbitrios del Estado Libre Asociado de Puerto Rico de 1987 (en adelante Ley de Arbitrios de 1987). Esta nueva ley dispuso claramente que no alteraría ningún contrato otorgado al amparo de su predecesora.[3]

En materia de los arbitrios sobre combustibles, petróleo crudo y productos de petróleo, la Ley de Arbitrios de 1987 resultó similar a la anterior. En primer lugar, la Sec. 2.005 (13 L.P.R.A. sec. 7055) impuso el mismo arbitrio de ocho (8) centavos por cada galón o fracción de galón de *gas oil* o *diesel oil* que imponía el Art. 37 de la Ley de Arbitrios de 1956 (13 L.P.R.A. ant. sec. 4037).[4] En segundo lugar, la Sec. 2.006, similar al previo Art. 30C de la Ley de Arbitrios de 1956 (13 L.P.R.A. ant. sec. 4030), impuso un arbitrio adicional por el uso en Puerto Rico de petróleo crudo o de productos de petróleo, con la misma disposición en cuanto a que este arbitrio no sería aplicable "a aquellos utilizados

---

los pagó directamente al fisco si no los hubiere incluido en todo o en parte en el precio de venta ...". Íd.

[3] La Sec. 11.001 de la Ley Núm. 5 de 8 de octubre de 1987, conocida como la Ley de Arbitrios del Estado Libre Asociado de Puerto Rico de 1987 (en adelante Ley de Arbitrios de 1987) dispone, en la parte pertinente, que:

"Ninguna disposición de esta ley se entenderá que modifica, altera o invalida cualquier acuerdo, convenio, reclamación o contrato que se haya otorgado al amparo de la Ley Núm. 2 de 20 de enero de 1956, según enmendada, que aquí se deroga y que estén vigentes a la fecha de entrar en vigor esta ley." 13 L.P.R.A. sec. 7001n.

[4] Previo a su emmienda por la Ley Núm. 41 de 29 de julio de 1992, la Sec. 2.005 (13 L.P.R.A. sec. 7055) disponía, en la parte pertinente, que:

"Se impondrá, cobrará y pagará el arbitrio que a continuación se indica sobre cada galón o fracción de galón de los siguientes combustibles:
"(1)    Gasolina—                          16¢
"(2)    Combustible de aviación—          53¢
"(3)    Gas oil o Diesel oil—             58¢."

La Ley Núm. 41, *supra*, cambió, entre otras cosas, el arbitrio sobre el combustible de aviación y enmendó el inciso (3) para que leyera "*Gas oil* o *Diesel oil* o cualquier otro combustible marítimo ...". 13 L.P.R.A. sec. 7055 (Sup. 1993).

Según la Sec. 2.001, "[e]l arbitrio fijado regirá si el artículo ha sido introducido, vendido, consumido, usado, traspasado o adquirido en Puerto Rico ...". 13 L.P.R.A. sec. 7051.

por la Autoridad de Energía Eléctrica para generación de electricidad". 13 L.P.R.A. sec. 7056(a) y (b)(1).[5]

La nueva ley, sin embargo, no incluyó una sección similar al Art. 51(a)(4) de la ley anterior, 13 L.P.R.A. ant. sec. 4051(a)(4), la cual eximía del pago de arbitrios a los artículos vendidos localmente por traficantes, fabricantes, representantes o distribuidores a agencias e instrumentalidades del Gobierno estatal para fines oficiales. 13 L.P.R.A. secs. 7121 y 7059.

El contrato entre la Autoridad y Caribbean Petroleum vencía el 31 de agosto de 1988. Antes de otorgar otro contrato similar y en atención a la incertidumbre ·del Departamento de Hacienda (en adelante el Departamento), en torno a si la Autoridad estaba o no exenta de los arbitrios impuestos bajo la nueva ley, Caribbean Petroleum solicitó al Secretario de Hacienda que emitiera una opinión sobre el particular.

Mediante Carta de 4 de mayo de 1988, el Sr. Ángel L. Pérez Muñoz, Director del Negociado de Arbitrios, comunicó la determinación del Departamento en cuanto a que la nueva ley obligaba a la Autoridad a pagar arbitrios, pero no con respecto a los productos de petróleo que se utilizaran para generar electricidad. Transcribimos la parte pertinente de la carta.

Hemos leído los documentos que nos sometiera y determinamos que a partir del día 8 de octubre de 1987 ambas agencias

---

[5] Dispone la Sec. 2.006 de la Ley de Arbitrios de 1987, en las partes pertinentes:

"En adición a los arbitrios fijados en la sec. 7055 de este título, se impondrá, cobrará y pagará un impuesto por el uso en Puerto Rico de petróleo crudo, de productos parcialmente elaborados o de productos terminados derivados del petróleo y de cualquier otra mezcla de hidrocarburos ....

"A los fines de esta sección, el término 'uso' incluirá la introducción, uso, consumo, venta, adquisición y traspaso en Puerto Rico del petróleo crudo o productos de petróleo gravados en esta sección.

"(b) Exenciones.—El impuesto fijado en esta sección no será aplicable al:

"(1)Petróleo crudo, productos parcialmente elaborados, a los productos terminados derivados del petróleo, ni a cualquier otra mezcla de hidrocarburos utilizados por la Autoridad de Energía Eléctrica para generación de electricidad." 13 L.P.R.A. sec. 7056 (Sup. 1993).

[Autoridad de Energía Eléctrica y Autoridad de Edificios Públicos] vienen obligadas a pagar el arbitrio que impone la Ley Núm. 5, Ley de Arbitrios del Estado Libre Asociado de Puerto Rico, aprobada en la fecha antes señalada. Excepto que la Autoridad de Energía Eléctrica se le exime del arbitrio que se establece en las Secciones 2.005 y 2.006 sobre productos de petróleo que esta agencia utilice para la producción de energía eléctrica. Carta de 4 de mayo de 1988, pág. 1.

Aparentemente, el Departamento entendía que la exención de la Sec. 2.006(b)(1) de la Ley de Arbitrios de 1987 para el petróleo crudo y demás productos de petróleo que la Autoridad utiliza para generar electricidad aplicaba no sólo al arbitrio de la propia Sec. 2.006, sino también al arbitrio sobre combustible de la Sec. 2.005.

Poco después, el 24 de junio de 1988, la Autoridad le informó a Caribbean Petroleum que, de acuerdo con su Consultora Jurídica, el destilado liviano no estaba sujeto al arbitrio porque se utilizaba para generar energía.[6]

Así las cosas, Caribbean Petroleum suscribió un nuevo contrato con la Autoridad para suministrarle destilado liviano por otro período de un (1) año, desde el 1ro de septiembre de 1988 hasta el 31 de agosto de 1989, renovable por un período adicional de igual duración que expiraría el 31 de agosto de 1990. Amparada en la opinión del Departamento, Caribbean Petroleum no incluyó en el precio de venta los arbitrios impuestos por las Secs. 2.005 y 2.006 de la Ley de Arbitrios de 1987, *supra*. De acuerdo con el procedimiento establecido, Caribbean Petroleum consignaría dichos arbitrios al levantar el destilado liviano y luego solicitaría su reintegro al Departamento.

---

[6] La parte pertinente de la Carta de 24 de junio de 1988 de Winston A. Esterlitz, Auxiliar en Asuntos Gerenciales III de la Oficina de Combustible de la Autoridad, dispone como sigue:

"En opinión emitida por la Lcda. Myrtelina M. Fernández, nuestra Consultora Jurídica, nos indica que:

"1. Lo que la Caribbean Gulf Refining Corp. nos vende es 'Light Distillate' y no Diesel.

"2. Ya que este 'Light Distillate' se utiliza para generar energía, no está sujeto al arbitrio de 'excise Tax'." Carta de 24 de junio de 1988, pág. 1.

Las cosas permanecieron en ese estado durante un período aproximado de dos (2) años hasta que, en febrero de 1990, el Departamento —bajo la nueva administración del Hon. Ramón García Santiago— cambió su posición con respecto a la exención del arbitrio de ocho (8) centavos por galón que sobre el *gas oil* o el *diesel oil* impone la Sec. 2.005 de la nueva ley. 13 L.P.R.A. sec. 7055. En reunión celebrada el 20 de febrero de 1990, auditores de la Oficina de Arbitrios del Departamento le informaron a Caribbean Petroleum que la Autoridad estaba obligada a pagar el arbitrio referido sobre el destilado liviano, a pesar de que sea utilizado para generar energía eléctrica.

Acto seguido, el 22 de febrero de 1990, el Sr. Pedro Santiago, Asistente del Director Ejecutivo de Caribbean Petroleum, le escribió al Director del Negociado de Arbitrios del Departamento, Sr. Ángel L. Pérez Muñoz, y le solicitó la posición oficial del Departamento en torno a la exención, debido a que la posición de los auditores contradecía la expuesta por el propio señor Pérez Muñoz en su Carta de 4 de mayo de 1988. En la misma fecha, el señor Santiago le envió una carta al Director Ejecutivo de la Autoridad, Sr. José A. Del Valle Vázquez, en la cual le informó acerca del cambio por parte del Departamento y de su entendimiento en cuanto a que correspondía a la Autoridad pagar nuevo arbitrio.([7])

---

([7]) El Art. XI del contrato disponía que el precio de venta incluía todas las contribuciones, impuestos o arbitrios aplicables, y que en caso de que aumentasen o se impusiesen nuevos impuestos sobre el producto, éstos se pasarían al comprador, es decir, a la Autoridad. Dispone el Art. XI, en la parte pertinente, lo siguiente:

"The contracted price includes all taxes, fees, or established import tariffs for foreign material.

"1.   In the event that any new or increased taxes, fees, or tariffs, applicable to the product being supplied hereby are levied by Federal and/or Commonwealth of Puerto Rico Governments, and as long as these taxes, fees or tariffs do not discriminate whether the product is domestic or foreign, these will be passed on in their entirety to buyer; any changes up or down in these taxes, fees, or tariffs should they be imposed, will be reflected in the price in its entirety and seller will adjust the price accordingly. However, should said new or increased taxes, fees or tariffs discriminate whether the product is domestic or foreign and said new or increased taxes, fees or tariffs result in a lower price for domestic fuel, the seller must supply fuel which results in the lowest cost to the buyer." *Exhibit* V, Anejo D, págs. 18–19.

Este último respondió primero. Mediante Carta de 5 de marzo de 1990, el señor Del Valle Vázquez manifestó que, a su entender, la cuestión se limitaba a cómo interpretar la exención de la Sec. 2.006(b)(1) de la Ley de Arbitrios de 1987, *supra*, para el petróleo crudo y demás productos de petróleo que la Autoridad utiliza para generar energía eléctrica y que, conforme a su comunicación con la entonces Subsecretaria del Departamento, Lcda. Rosa González, la Autoridad "está excluida del gravamen [de ocho centavos (8¢) por galón de la sección 2.005] en las entregas que realiza su compañía por concepto de Destilado Liviano Núm. 2, ya que este combustible es utilizado para generación".

El Departamento, por su parte, confirmó su cambio de posición. Mediante Notificaciones de 4 y 14 de mayo de 1990, el Director del Negociado de Arbitrios le informó a Caribbean Petroleum sobre la denegación del reintegro por las sumas de ciento ochenta y dos mil novecientos ochenta y cuatro dólares ($182,984) y un millón treinta y tres mil setecientos treinta y seis dólares ($1,033,736), ambas previamente consignadas por el concepto de arbitrios sobre el destilado liviano que fue entregado a la Autoridad para el cumplimiento del segundo contrato. El Departamento justificó estas dos (2) denegaciones con la breve explicación de que, a su entender, la Ley de Arbitrios de 1987 no contiene disposición alguna que autorice el reintegro solicitado.([8])

---

[8] La Notificación de 4 de mayo de 1990 se refería a arbitrios consignados por el destilado liviano entregado a la Autoridad entre septiembre de 1988 y marzo de 1989. Véase Anejo K del Apéndice a la Solicitud de revisión de Caribbean Petroleum, Caso Civil Núm. K-CO-90-0032, Tribunal Superior, Sala de San Juan, pág. 53. El Director del Negociado de Arbitrios explicó la denegación de la manera siguiente:

"La investigación practicada por nuestros funcionarios fiscales revela que los 2,287,300 [el reintegro de arbitrios sobre los] galones de aceite diesel no proceden [sic], ya que no existe Sección en la Ley de Arbitrios del Estado Libre Asociado de Puerto Rico, Ley Núm. 5 de 8 de octubre de 1987, según enmendada, donde se pueda autorizar dicho reintegro."

La Notificación de 14 de mayo de 1990, por su parte, se refería a arbitrios consignados por destilado liviano entregado entre abril de 1989 y febrero de 1990. Véase Anejo K del Apéndice a la Solicitud de revisión de Caribbean Petroleum, Caso Civil Núm. K-CO-90-0032, Tribunal Superior, Sala de San Juan, pág. 54. La razón para la denegación fue la misma:

El 4 de mayo de 1990 el Departamento denegó otro reintegro por la suma de trescientos noventa y nueve mil veintinueve dólares con setenta y seis centavos ($399,029.76), consignada anteriormente por el concepto de arbitrios sobre destilado liviano entregado a la Autoridad entre octubre y diciembre de 1987 para el cumplimiento del primer contrato.(⁹)

En vista de que este contrato se había otorgado durante la vigencia de la Ley de Arbitrios de 1956, la cual expresamente eximía de arbitrios a los artículos adquiridos por instrumentalidades gubernamentales para uso oficial, el Departamento denegó el reintegro porque, según ellos, Caribbean Petroleum lo había solicitado después del término de ciento ochenta (180) días que dispone la Sec. 3.003 de la Ley de Arbitrios de 1987 (13 L.P.R.A. sec. 7103).(¹⁰)

En las tres (3) notificaciones del Departamento de Hacienda le informaron a Caribbean Petroleum que, de estar inconforme con éstas, tendría un término de treinta (30) días para recurrir al Tribunal Superior según la Sec. 7.002 de la Ley de Arbitrios de 1987 (13 L.P.R.A. sec. 7302).(¹¹)

---

"La investigación practicada por nuestros funcionarios fiscales revela que [el reintegro de arbitrios sobre los] los 12,921,700 galones de aceite diesel no proceden [sic], ya que no existe Sección en la Ley de Arbitrios del Estado Libre Asociado de Puerto Rico, Ley Núm. 5 del 8 de octubre de 1987, según enmendada, donde se pueda autorizar dicho reintegro."

(⁹) A pesar de que en la notificación la suma especificada es trescientos treinta y nueve mil veintinueve dólares con setenta y seis centavos ($339,029.76), un análisis de la "Relación de impuestos reclamados y a denegar [sic] a la firma Caribbean Petroleum Corp. sobre galones de *Light Distillate*" que acompañó la notificación demuestra que la suma correcta es trescientos noventa y nueve mil veintinueve dólares con setenta y seis centavos ($399,029.76).

(¹⁰) El Director del Negociado de Arbitrios explicó la razón para esta denegación de la manera siguiente:

"La investigación practicada por nuestros funcionarios fiscales revela que los 4,987,872 galones de aceite diesel no proceden, ya que fueron reclamados después de haber transcurrido más de los ciento ochenta (180) días dispuestos por la sección 3.003 de la Ley de Arbitrios del Estado Libre Asociado de Puerto Rico, Ley Núm. 5, aprobada en 8 de octubre de 1987, según enmendada." Anejo A, pág. 12.

(¹¹) El párrafo final de las tres (3) notificaciones, el cual informa del término para acudir al tribunal, es exactamente igual. Él dispone como sigue:

"De no estar conforme con la determinación final anterior y de ser su decisión litigar este caso al amparo de la Sección 7.002 de la Ley Número 5 del 8 de octubre de 1987, según enmendada, tienen treinta (30) días a partir de la fecha en que esta

Esta instrucción presentó un dilema para Caribbean Petroleum. Si bien el Departamento le informó sobre su derecho, según la Ley de Arbitrios de 1987, a presentar demanda y a cuestionar las determinaciones en juicio *de novo* ante el Tribunal Superior, la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (en adelante L.P.A.U.), Ley Núm. 170 de 12 de agosto de 1988 (3 L.P.R.A. sec. 2101 *et seq.*), por el contrario, exigía una moción de reconsideración ante la agencia como requisito jurisdiccional previo a una solicitud de revisión judicial ante el mismo tribunal.([12])

Ante esta incertidumbre, Caribbean Petroleum optó por cumplir con ambos procedimientos. En primer lugar, siguió las instrucciones del Departamento y, conforme a la Sec. 7.002 de la nueva Ley de Arbitrios de 1987, *supra*, el 1ro de junio de 1990 presentó una demanda contra éste ante el Tribunal Superior, Sala de San Juan, en la cual impugnó las tres (3) notificaciones y solicitó el reintegro denegado.

Además, consciente de la posible aplicación de la L.P.A.U., solicitó reconsideración al Director del Negociado de Arbitrios con el único argumento de que:

---

comunicación sea puesta en el correo para recurrir al Tribunal correspondiente." Anejo A, pág. 12.

([12]) Según la Sec. 1.4 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (en adelante L.P.A.U.), Ley Núm. 170 de 12 de agosto de 1988 (3 L.P.R.A. sec. 2103), es aplicable a "todos los procedimientos administrativos ante todas las agencias que no están expresamente exceptuados por esta ley". Para la fecha de los sucesos de este caso, la L.P.A.U. no contenía las disposiciones particulares aplicables únicamente al Departamento de Hacienda (en adelante Departamento). La Asamblea Legislativa añadió éstas por medio de la Ley Núm. 18 de 30 de noviembre de 1990 (3 L.P.R.A. secs. 2102–2105, 2121, 2128–2130, 2132, 2134, 2136–2151, 2171, 2181), aprobada aproximadamente mes y medio después de que el Tribunal Superior notificó la sentencia recurrida.

Previo a la aprobación de esta ley, ni el Cap. III sobre Procedimientos Adjudicativos ni el Cap. IV sobre Revisión Judicial establecían procedimientos especiales para los asuntos del Departameto de Hacienda. Según la Sec. 4.1, las disposiciones del Cap. IV sobre Revisión Judicial aplicarían a "aquellas órdenes, resoluciones y providencias dictadas por agencias o funcionarios administrativos que deban o puedan ser revisadas por el Tribunal Superior de Puerto Rico". 3 L.P.R.A. sec. 2171. La Sec. 3.15, por su parte, requería la presentación de una moción de reconsideración ante la agencia, previa a la solicitud de revisión ante el Tribunal Superior. 3 L.P.R.A. sec. 2165.

...los productos primarios que utiliza la Autoridad de Energía Eléctrica para generar energía están exentos del pago de arbitrios según las disposiciones de la sección 22 de la Ley número 83 del 2 de mayo de 1941, según enmendada, 22 L.P.R.A. 212 [Ley de la Autoridad de Energía Eléctrica de Puerto Rico]. Carta de 1ro de junio de 1990, pág. 1.

Mediante Carta de 2 de julio de 1990, el Departamento denegó esta solicitud con la breve explicación de que la Ley de Arbitrios de 1987 no autoriza el reintegro solicitado.[13] Esta vez, sin embargo, no instruyó a Caribbean Petroleum a acudir al Tribunal Superior de acuerdo con la Sec. 7.002 de dicha ley, *supra*, sino a presentar una querella al amparo de la L.P.A.U. en la Secretaría de Procedimiento Adjudicativo del Departamento dentro de los treinta (30) días a partir de la notificación.[14]

El Tribunal Superior, por su parte, dictó una sentencia en la que desestimó la demanda sin perjuicio por entender que la ley aplicable era la L.P.A.U. y no la Sec. 7.002 de la Ley de Arbitrios de 1987, *supra*, y que Caribbean Petroleum no había agotado los remedios administrativos porque el Departamento aún no había adjudicado la moción de

---

[13] En la parte pertinente de la Carta de 2 de julio de 1990, el Director del Negociado de Arbitrios se expresó como sigue:

"Deseamos notificarles que nos reafirmamos en nuestra determinación inicial, por cuanto no existe sección en la Ley de Arbitrios del Estado Libre Asociado de Puerto Rico, Ley Núm. 5 del 8 de octubre de 1987, según enmendada, donde se pueda autorizar el reintegro."

[14] El Reglamento Núm. 3991 de 15 de agosto de 1989 promulgado por el Departamento para establecer un procedimiento uniforme de adjudicación formal de conformidad con la Sec. 3.2 de la L.P.A.U. expresamente disponía que no aplicaría a los casos en los cuales la ley especial en la materia concedía el derecho a presentar demanda ante el tribunal y así cuestionar la determinación adversa del Departamento mediante juicio *de novo*. Reglamento para Establecer un Procedimiento Uniforme de Adjudicación para los Asuntos bajo la Jurisdicción del *Departamento de Hacienda que deban ser Objeto de Adjudicación Formal*, Art. 2 del Reglamento Núm. 3991 de 15 de agosto de 1989 (3 L.P.R.A. sec. 2152).

Nos sorprende, por lo tanto, que el Departamento haya instruido a Caribbean Petroleum a presentar una querella conforme a este reglamento cuando éste claramente establecía que *no aplicaba al caso porque la Ley de Arbitrios de 1987 concedía el derecho a juicio de novo* mediante presentación de demanda ante el Tribunal Superior. 13 L.P.R.A. sec. 7302.

reconsideración.(¹⁵) Ninguna de las partes solicitó revisión de esta sentencia.

Nuevamente, Caribbean Petroleum confrontó instrucciones contradictorias en cuanto al procedimimiento aplicable. Por un lado, el Tribunal Superior resolvió que debería solicitar revisión judicial luego de que el Departamento resolviera la moción de reconsideración; por otro, el propio Departamento le instruyó presentar una querella ante la Secretaría de Procedimiento Adjudicativo. Nuevamente, Caribbean Petroleum optó por cumplir con ambas instrucciones.

En vista de que el Departamento ya había denegado su moción de reconsideración, el 1ro de agosto de 1990 Caribbean Petroleum presentó una solicitud de revisión ante el Tribunal Superior, Sala de San Juan, Caso Civil Núm. K-CO-90-0023. Por alguna razón no evidente, solamente solicitó la revisión de las dos (2) Notificaciones de 4 de mayo del mismo año.

Acto seguido, y conforme a la instrucción del Departamento, el 2 de agosto de 1990 Caribbean Petroleum presentó una querella ante la Secretaría de Procedimiento Adjudicativo. Al día siguiente, la Secretaría desestimó la querella por entender, en abierta contradicción de sentencia y de la instrucción del propio Departamento pero de conformidad con el reglamento pertinente, que era aplicable el procedimiento establecido en la Sec. 7.002 de la Ley de Arbitrios de 1987, *supra*. Véanse: Arts. 2 y 5 del Reglamento Núm. 3991 de 15 de agosto de 1989; 3 L.P.R.A. sec.

---

(¹⁵) El Tribunal Superior explicó que no podía acoger el recurso "ya que de la propia demanda surge que se encuentra pendiente de resolución ante el Secretario de Hacienda una solicitud de reconsideración de la denegatoria [sic] de reintegro de arbitrios, o sea, de la resolución recurrida. La revisión se da contra la resolución en reconsideración". Sentencia, *Caribbean Petroleum Co. v. Secretario de Hacienda*, Caso Civil Núm. K-CO-0013, Tribunal Superior, Sala de San Juan, pág. 1.

El tribunal dictó esta sentencia el 18 de julio de 1990. Para esa fecha el Departamento ya había denegado la solicitud de reconsideración de Caribbean Petroleum. A pesar de que Caribbean Petroleum presentó una moción informativa en torno la denegación de tal solicitud, el tribunal parece no haber tomado conocimiento de la misma al dictar la sentencia.

2152. Oportunamente, Caribbean Petroleum presentó moción de reconsideración, la cual fue declarada sin lugar el 22 de agosto de 1990.

Por último, el 17 de septiembre de 1990 Caribbean Petroleum presentó otra solicitud de revisión ante el Tribunal Superior, Sala de San Juan, en la cual solicitó la revocación de la Notificación de 14 de mayo, Caso Civil Núm. K-CO-90-0032.

El tribunal consolidó ambos recursos y mediante Sentencia de 8 de octubre de 1990 declaró con lugar las peticiones de Caribbean Petroleum y ordenó al Departamento reintegrar las sumas previamente consignadas, más intereses. En síntesis, el tribunal resolvió, en primer lugar, que la exención del arbitrio de la Sec. 2.006 para el petróleo crudo o los productos de petróleo utilizados por la Autoridad para generar electricidad se extiende al arbitrio sobre combustible de la Sec. 2.005 y, en segundo lugar, que el cobro del arbitrio de la Sec. 2.005 equivaldría a la imposición de una contribución sobre las actividades de la Autoridad, cosa que la propia Ley de la Autoridad de Energía Eléctrica de Puerto Rico prohíbe, a menos que la Asamblea Legislativa así lo haga expresamente por medio de una ley posterior.

Inconforme, recurrió ante nos el Departamento mediante Petición de *certiorari* y solicitó la revocación de la sentencia.

Señala que el tribunal de instancia erró al: (1) resolver que la Autoridad está exenta del arbitrio que impone la Sec. 2.005 de la Ley de Arbitrios de 1987, *supra*, y que, por lo tanto, Caribbean Petroleum tiene derecho al reintegro de las sumas retenidas por el concepto de los arbitrios al destilado liviano vendido a la Autoridad a raíz del segundo contrato, y (2) ordenar el reintegro de la suma de trescientos noventa y nueve mil veintinueve dólares con setenta y seis centavos ($399,029.76), retenida por el concepto de arbitrios al destilado liviano vendido a raíz del primer con-

trato, a pesar de que, según alegado, Caribbean Petroleum lo había reclamado fuera del término prescrito en ley.

El Departamento señala, por último, que el tribunal a quo incidió al acoger las solicitudes de revisión de Caribbean Petroleum y no ordenar la presentación de una demanda y la celebración de un juicio *de novo* conforme a la Sec. 7.002 de la Ley de Arbitrios de 1987, *supra*, o, en la alternativa, al ejercer jurisdicción sobre la segunda solicitud de revisión toda vez que, según lo alegado, Caribbean Petroleum la presentó fuera del término aplicable de la L.P.A.U.

Accedimos a la solicitud de la Asociación de Industriales de Puerto Rico de comparecer como *amicus curiae.*

## II

Atendemos, en primer lugar, el señalamiento del Departamento de que el tribunal de instancia erró al acoger las solicitudes de revisión al amparo de la L.P.A.U. y al no ordenar la presentación de una demanda y la celebración de un juicio *de novo* de acuerdo con la Sec. 7.002 de la Ley de Arbitrios de 1987, *supra*. Según el Departamento, la Ley de Procedimiento Administrativo Uniforme no tuvo el efecto de derogar la referida Sec. 7.002 de la Ley de Arbitrios de 1987, por lo que, a su entender, se debió haber observado el procedimiento de demanda y juicio *de novo* presentado en dicha sección. Solicita, por lo tanto, la revocación de la sentencia recurrida.

A. Para entender esta controversia es preciso señalar que cuando Caribbean Petroleum presentó sus solicitudes de revisión existía una duda legítima sobre el procedimiento aplicable para recurrir al Tribunal Superior por una denegación de una solicitud de reintegro de arbitrios. Por un lado, la Ley de Arbitrios de 1987 ofrecía un procedimiento informal ante la agencia, seguido de la presentación de una demanda y la celebración de un juicio *de novo*.

Por otro lado, sin embargo, la L.P.A.U. presentaba la celebración de un procedimiento adjudicativo formal ante la agencia y una revisión judicial de las determinaciones de hecho y las conclusiones de derecho, previa presentación de una moción de reconsideración ante la agencia.

La duda sobre el procedimiento aplicable surgió a raíz de las disposiciones de la L.P.A.U. que establecían que ésta aplicaría a todos los procedimientos administrativos ante todas las agencias no excluidas expresamente del ámbito de la ley y que el capítulo de la ley sobre revisión judicial aplicaría a todas aquellas órdenes o resoluciones de las agencias que pudieran ser revisadas por el Tribunal Superior. Sec. 1.4 y 4.1 de la Ley Núm. 170, *supra*, 3 L.P.R.A. secs. 2103 y 2171. En vista de que el Departamento no estaba entre las agencias excluidas de la L.P.A.U. y de que sus determinaciones podían ser impugnadas ante el Tribunal Superior, estas disposiciones de la L.P.A.U. parecían indicar que los procedimientos de demanda y juicio *de novo* de varias leyes contributivas, entre ellas la Ley de Arbitrios de 1987, quedaron tácitamente derogados y que le correspondía al Departamento establecer un procedimiento adjudicativo formal para que así el Tribunal Superior pudiera ejercer luego una revisión judicial a base del expediente administrativo.

■ De hecho, éste fue el argumento que ofreció el propio Tribunal Superior para desestimar sin perjuicio la demanda que presentó Caribbean Petroleum luego de recibir las primeras denegaciones de los reintegros solicitados. La sentencia dictada en ese caso instruyó, precisamente, a Caribbean Petroleum a presentar una solicitud de revisión al amparo de la L.P.A.U., una vez el Departamento atendiera su moción de reconsideración. De más está señalar las marcadas diferencias entre un juicio *de novo*, en el que las partes tienen la oportunidad de presentar prueba ante el tribunal, y una revisión judicial, que limita al tribunal a revisar si las determinaciones de hecho de la agencia están

sostenidas por evidencia sustancial en el expediente administrativo.

■ Las gestiones de Caribbean Petroleum para cumplir tanto con la L.P.A.U. como con la Sec. 7.002 de la Ley de Arbitrios de 1987, *supra*, así como las instrucciones contradictoras del Departamento, son indicios suficientes de la magnitud de la duda imperante en aquél entonces en cuanto al procedimiento aplicable. Esta duda fue esclarecida finalmente cuando la Asamblea Legislativa aprobó la Ley Núm. 18 de 30 de noviembre de 1990. Esta ley enmendó las Secs. 3.1 y 4.1 de la L.P.A.U., 3 L.P.R.A. secs. 2151 y 2171, precisamente para disponer un procedimiento especial para los asuntos de las leyes de rentas internas del Estado. La enmienda a la Sec. 3.1 dispuso que los asuntos y las actuaciones del Secretario de Hacienda, con respecto a las leyes de rentas internas, se regirán por un procedimiento informal y la enmienda a la Sec. 4.1 dispuso claramente que las órdenes o resoluciones que el Secretario dicte con relación a dichas leyes "se revisarán mediante la presentación de una demanda y la celebración de un juicio *de novo*". 3 L.P.R.A. sec. 2171.

Estas enmiendas, sin embargo, no convirtieron en académica la controversia del caso de autos, toda vez que al momento de la aprobación de la Ley Núm. 18, *supra*, el Tribunal Superior ya había notificado la sentencia recurrida. El Departamento sostiene ahora que tiene derecho a juicio *de novo*; primero, porque la Ley Núm. 18, *supra*, tiene efecto retroactivo y, segundo, porque aun antes de la aprobación de la citada Ley Núm. 18, la Sec. 7.002 de la Ley de Arbitrios de 1987, *supra*, le concedía un derecho a juicio *de novo* y el foro de instancia le privó de éste al acoger las solicitudes de revisión de Caribbean Petroleum al amparo de la L.P.A.U.

A nuestro juicio, no es necesario dilucidar el efecto de la retroactividad de la Ley Núm. 18, *supra*, o el procedimiento aplicable antes de la aprobación de dicha ley para

disponer de esta controversia.[16] Consideramos que bajo las circunstancias particulares de este caso no hay mayor diferencia entre un juicio *de novo* y el procedimiento que, en efecto, se siguió ante el Tribunal Superior. A pesar de que el procedimiento ante el Tribunal Superior se intituló revisión judicial, lo cierto es que lo que se celebró fue, en esencia, un juicio *de novo*. Nos explicamos.

El Departamento no le concedió a Caribbean Petroleum un procedimiento adjudicativo formal antes de dictar las denegaciones de las solicitudes de reintegro. Las tres (3) denegaciones notificadas no contenían determinaciones de hecho ni conclusiones de derecho. No existía, por lo tanto, ni una resolución con determinaciones de hecho y de Derecho ni un expediente administrativo que pudieran servir de fundamento para la revisión judicial que ofrece la Sec. 4.5 de la L.P.A.U., 3 L.P.R.A. sec. 2175. Toda la prueba necesaria para poder adjudicar la procedencia de los reintegros solicitados fue presentada por primera vez ante el Tribunal Superior. Éste tuvo que evaluar la prueba documental sometida y realizar sus propias determinaciones de hecho. Su evaluación de la prueba reveló que no había disputa alguna sobre los hechos del caso y que las únicas controversias entre las partes eran estrictamente de Derecho. Procedió, por lo tanto, a adjudicar estas controversias y disponer del caso sin celebrar una vista evidenciaria.

▮ En vista de estas circunstancias, entendemos que a pesar de haber acogido los recursos de Caribbean Petroleum como solicitudes de revisión al amparo de la L.P.A.U.,

---

[16] En su informe sobre la enmienda a la Sec. 4.7 de la L.P.A.U., la Comisión de Gobierno de la Cámara de Representantes señaló que esta enmienda codifica la práctica contenida en las leyes de rentas internas y que esta codificación resulta "indispensable en vista de lo dispuesto en el Artículo 6 del Código Civil, 31 L.P.R.A. sec.6". Informe de la Comisión de Gobierno de la Cámara de Representantes sobre el P. de la C. 1120 de 23 de octubre de 1990, págs. 13–14. Esto parece indicar que esta Comisión consideraba que la L.P.A.U. había derogado a lás partes pertinentes de las leyes de rentas internas y que era necesaria una disposición específica para reestablecerlas. Después de todo, el referido Art. 6 del Código Civil dispone que "[l]a derogación de una ley derogatoria no reestablece la primitiva ley derogada". 31 L.P.R.A. sec. 6.

el foro de instancia realmente celebró un juicio *de novo* en el que tanto el Departamento como Caribbean Petroleum tuvieron amplia oportunidad de presentar toda la prueba y los argumentos legales necesarios para adjudicar las controversias entre ellas. No podemos acceder, por lo tanto, a la solicitud del Departamento de revocar la sentencia y devolver para otro juicio *de novo*. No vemos cómo se adelantaría la causa de la justicia y la economía procesal de seguir este curso de acción. Después de todo, éste es un caso en el cual todos los hechos constan claramente en la prueba documental y todas las controversias son estrictamente de Derecho. Sabido es que este Tribunal es el último árbitro de todas la cuestiones de Derecho y que está en la misma posición que el tribunal de instancia para evaluar la prueba documental.[17]

B.   En defecto de este primer planteamiento, el Departamento sostiene que Caribbean Petroleum presentó la segunda solicitud de revisión fuera del término de treinta (30) días que dispone la Sec. 4.2 de L.P.A.U., 3 L.P.R.A. sec. 2172. Este planteamiento carece de mérito, toda vez que los autos revelan que Caribbean Petroleum cumplió con las instrucciones del propio Departamento al acudir a la Secretaría de Procedimiento Administrativo para impugnar las denegaciones de reintegro, y con la L.P.A.U. al presentar la segunda solicitud de revisión dentro de los treinta (30) días, luego que dicha Secretaría declaró sin lugar su moción de reconsideración.

---

[17] Más aun, es menester señalar que Caribbean Petroleum respondió apropiadamente a la incertidumbre sobre el procedimiento aplicable e intentó seguir tanto el procedimiento de la Ley de Arbitrios de 1987 como el de la L.P.A.U., para así salvaguardar sus derechos. Cumplió con todas las instrucciones, a veces contradictorias, que recibiera del Departamento de Hacienda, y cuando acudió en revisión al Tribunal Superior, lo hizo en cumplimiento de la sentencia dictada por éste cuando acudió por primera vez mediante la presentación de una demanda conforme a la Sec. 7.002 de la Ley de Arbitrios de 1987, *supra*. El Departamento no solicitó revisión de esta sentencia. No podemos ignorar ahora la diligencia de Caribbean Petroleum en respuesta a una controversia *bona fide* que requirió urgente intervención legislativa para su resolución.

## III

Atendemos, en segundo lugar, el señalamiento de error en torno a la exención de la Autoridad del arbitrio que impone la Sec. 2.005 de la Ley de Arbitrios de 1987 sobre el *gas oil* o *diesel oil* usado en Puerto Rico. 13 L.P.R.A. secs. 7051 y 7055.([18])

El Departamento sostiene que existe un conflicto irreconciliable entre la referida Sec. 2.005 y la Sec. 22(a) de la ley habilitadora de la Autoridad. Por un lado, la Ley de Arbitrios de 1987 dispone que se pagará un impuesto de ocho centavos (8¢) por cada galón o fracción de galón de *gas oil* o *diesel oil* usado en Puerto Rico; por otro, la ley habilitadora dispone que no se le requerirá a la Autoridad el pago de ningún impuesto sobre su actividades, propiedades e ingresos. 13 L.P.R.A. sec. 7055; 22 L.P.R.A. sec. 212(a).

Según el Departamento, la resolución de este conflicto reside en la aplicación de los principios de hermenéutica sobre leyes en conflicto enunciados en *Díaz Marín v. Mun. de San Juan*, 117 D.P.R. 334 (1986). Petición de *certiorari*, págs. 20–21; Informe del Procurador, págs. 23–24. A su entender, la Sec. 2.005 de la Ley de Arbitrios de 1987, *supra*, debe prevalecer no sólo porque constituye la última voluntad legislativa, sino también porque su historial alegadamente demuestra que uno (1) de sus propósitos principales era sujetar a todas las agencias e instrumentalidades del

---

([18]) Aunque por distintos fundamentos, Caribbean Petroleum y el Departamento de Hacienda coinciden en que el arbitrio que impone la Sec. 2.006 de la Ley de Arbitrios de 1987, *supra*, no aplica al petróleo crudo, a los productos parcialmente elaborados o a los productos terminados derivados del petróleo y a cualquier otra mezcla de hidrocarburos utilizados por la Autoridad para generar electricidad. 13 L.P.R.A. sec. 7056.

El Departamento sostiene que la Autoridad está exenta de este arbitrio por virtud de la propia Sec. 2.006(b)(1), debido a que ésta dispone expresamente que el arbitrio no será aplicable a los productos allí enumerados que la Autoridad utilice en la generación de electricidad. 13 L.P.R.A. sec. 7056. Caribbean Petroleum, por su parte, aduce que la Autoridad está exenta no sólo por virtud de la referida sección, sino por virtud de la exención general que dispone su propia ley orgánica, la cual no fue derogada por la Ley de Arbitrios de 1987. 22 L.P.R.A. sec. 212(a).

Gobierno estatal, corporaciones públicas, inclusive, al pago de arbitrios.

Caribbean Petroleum, por su parte, sostiene que no es necesario recurrir a estos principios de hermenéutica, toda vez que la ley habilitadora de la Autoridad contiene una disposición para atender precisamente este aparente conflicto de leyes. En su Sec. 27, dicha ley establece que sus disposiciones prevalecerán sobre las de cualquier otra ley con las que estén en conflicto y que ninguna ley que regule la administración del Gobierno estatal o sus dependencias deberá interpretarse como aplicable a la Autoridad, a menos que así lo disponga taxativamente. 22 L.P.R.A. sec. 217. Caribbean Petroleum propone que, en ausencia de una disposición expresa en contrario, esta sección requiere que la ley habilitadora de la Autoridad prevalezca sobre la Ley de Arbitrios de 1987.

El Departamento reconoce que esta sección "establece que las disposiciones de otras leyes que estén en conflicto con sus disposiciones no prevalecerán ante ésta salvo que expresen taxativamente que aplican a la A.E.E.". Petición de *certiorari*, págs. 18–19. Véase Informe del Procurador, pág. 22. Reconoce, además, que la Ley de Arbitrios de 1987 no contiene "una disposición que expresamente diga que dicha ley aplica a la A.E.E.". Petición de *certiorari*, pág. 20. Véase Informe del Procurador General, pág. 23. Sostiene, sin embargo, que esta ausencia no es dispositiva. Petición de *certiorari*, pág. 20. Véase Informe del Procurador General, pág. 23.

A su entender, la intención de sujetar a la Autoridad y a otras corporaciones públicas al pago de arbitrios surge tan claramente de historial legislativo que

[l]a ausencia de una disposición en la Ley de Arbitrios de 1987 que diga específicamente que enmienda la ley habilitadora de la A.E.E. a los fines de que se le aplique el arbitrio fijado en la sección 7055 [sec. 2.005], constituye un lapsus o una inadvertencia del legislador que no debe evitar que se cumpla el pro-

pósito esencial de dicha ley. Informe del Procurador General, pág. 25. Véase Petición de *certiorari*, pág. 21.

█ Nos invita, por lo tanto, a añadir una frase a la Ley de Arbitrios de 1987 que aclare su aplicación a la Autoridad para que así remediemos esta alegada "inadvertencia" de la Asamblea Legislativa.(19) Petición de *certiorari*, pág. 20. Véase Informe del Procurador General, págs. 23–24. De acuerdo con el Departamento, no proceder así conllevaría dar un sentido absurdo a la Ley de Arbitrios de 1987; ignorar la intención legislativa, y poner en riesgo el éxito de la Reforma Contributiva de 1987. Petición de *certiorari*, pág. 21. Véase Informe del Procurador General, págs. 24 y 25. No estamos de acuerdo.

En primer lugar, la Autoridad ha disfrutado de exención en materia de arbitrios desde la aprobación de su ley habilitadora en 1941. En segundo lugar, la Asamblea Legislativa decidió proteger esta exención, así como otras disposiciones de la ley, con la aprobación en 1942 de las dos (2) reglas de la Sec. 27. Esta sección no alberga ambigüedad cuando determina que las disposiciones de la ley habilitadora prevalecerán sobre cualquier otra disposición de ley con la que estén en conflicto y cuando exige una disposición taxativa para que cualquier ley posterior que regule la administración del Gobierno sea aplicable a la Autoridad.

No cabe duda de que la Asamblea Legislativa tenía conocimiento explícito, tanto de la exención de la Autoridad como de las reglas de la referida Sec. 27, y que, no obstante, optó por no enmendar la ley habilitadora de la Au-

---

(19) Para fortalecer su posición de que la Autoridad no está exenta del pago de arbitrios, el Departamento de Hacienda presentó unos documentos que demuestran que en julio de 1989 la Autoridad se acogió a un plan de prepago de arbitrios sobre mercancía general y vehículos de motor, y que entre agosto de 1989 y junio de 1990 la Autoridad realizó pagos conforme a dicho plan.

Sabido es, sin embargo, que las leyes se derogan solamente por leyes posteriores y que contra las leyes no prevalecerá la práctica en contrario. 31 L.P.R.A. sec. 5. El caso ante nos se limita a la procedencia legal del reintegro de unos arbitrios pagados por Caribbean Petroleum sobre destilado liviano vendido a la Autoridad. Si la Autoridad ha o no pagado arbitrios sobre otros artículos y si ha reclamado o no el reintegro de éstos son asuntos más allá del ámbito del presente caso.

toridad o incluir una disposición en la nueva ley para, expresamente, sujetar a la Autoridad al pago de arbitrios.

■ Contrario a la posición del Departamento, el historial legislativo de la Ley de Arbitrios de 1987 no demuestra una intención inequívoca de sujetar a la Autoridad y a otras corporaciones similarmente situadas al pago de arbitrios. Revela, mas bien, que a pesar de conocer las exenciones de la ley habilitadora de la Autoridad y de otras leyes similares, la Asamblea Legislativa no actuó para incluir en el estatuto una manifestación clara de su intención con respecto al futuro de las exenciones de las corporaciones públicas.

Ante este cuadro, este Tribunal no está en la posición de acceder a la solicitud del Departamento para incorporar una frase a la Ley de Arbitrios de 1987 que elimine la exención de la Autoridad en materia de arbitrios. Es difícil creer que la ausencia de una disposición para eliminar las exenciones de un sinnúmero de corporaciones públicas —vigentes, en algunos casos, por más de cuarenta (40) años— haya sido el producto de un "lapsus" o una mera "inadvertencia" del legislador. Si el éxito de la Reforma Contributiva de 1987 dependía de esta derogación, le correspondía a la Asamblea Legislativa tomar la acción necesaria para lograr el cumplimiento de sus alegados propósitos.

■ A. Al momento de la aprobación de la Ley de Arbitrios de 1987, todas las agencias e instrumentalidades públicas, corporaciones públicas inclusive, gozaban de exención contributiva en materia de arbitrios. Estas exenciones, sin embargo, no provenían de la misma fuente legal. Es preciso distinguir la exención genérica que concedió la Ley Núm. 6 de 10 de abril de 1970 (13 L.P.R.A. ant. sec. 4051) y las exenciones específicas contenidas en las leyes habilitadoras de un sinnúmero de corporaciones públicas.

■ La referida Ley Núm. 6 enmendó el Art. 51(a)(4) de la Ley de Arbitrios de 1956, *supra*, para conceder, entre otras cosas, una exención sobre aquellos artículos tributables adquiridos en el mercado local por agencias e instrumentalidades del Gobierno estatal para usos oficiales. 13 L.P.R.A. sec. 4051(a)(4).[20] Previo a la aprobación de esta Ley Núm. 6, la Ley de Arbitrios de 1956 no contenía exención para aquellas dependencias gubernamentales que adquiriesen artículos tributables. Informe de la Comisión de Hacienda del Senado de Puerto Rico sobre el P. de la C. 564 de 12 de marzo de 1970, 6ta Asamblea Legislativa, 2da Sesión Ordinaria. No todas estas dependencias, sin embargo, estaban sujetas al pago de arbitrios.

■ Para aquel entonces, las leyes orgánicas de ciertas corporaciones públicas contenían, y aún contienen, disposiciones específicas que las eximían de todo tipo de impuesto o contribución sobre sus actividades, propiedades e ingresos. 13 L.P.R.A. ant. sec. 4051(a)(4). Véase, *e.g.*, 22 L.P.R.A. sec. 212(a).[21] Por lo general, estas exenciones in-

---

[20] El referido Art. 51(a)(4) de la Ley de Arbitrios de 1956 disponía, en la parte pertinente, como sigue:

"(a)*Artículos Diversos*. Los siguientes artículos estarán exentos del impuesto:

. . . . . . . . . .

"(4)Artículos vendidos localmente por traficantes, fabricantes, representantes o distribuidores, a agencias e instrumentalidades federales y del gobierno estatal y a los municipios ... para uso oficial ...

"Esta exención incluye los artículos ordenados al exterior por mediación de distribuidores o representantes locales; los artículos cuya modalidad contributiva es la venta, y aquéllos [sic] que un traficante tenga disponibles en su establecimiento al momento de recibir la orden de compra y respecto a los cuales se han pagado los impuestos correspondientes; o que no habiéndose pagado los mismos, dichos artículos estén bajo el control de alguna exención condicional dipuesta por este subtítulo." 13 L.P.R.A. sec. 4051(a)(4).

[21] Véanse: Secs. 15 y 21 de la Ley Núm. 40 de 1ro de mayo de 1945, según enmendada, conocida como la Ley de Acueductos y Alcantarillados de Puerto Rico, 22 L.P.R.A. secs. 155 y 161; Arts. 18 y 22 de la Ley Núm. 125 de 7 de mayo de 1942, según enmendada, conocida como la Ley de la Autoridad de los Puertos de Puerto Rico, 23 L.P.R.A. secs. 348 y 352; Secs. 23 y 26 de la Ley Núm. 212 de 12 de mayo de 1942, según enmendada, conocida como la Ley de la Autoridad de Comunicaciones de Puerto Rico, 27 L.P.R.A. secs. 312 y 316; Art. 8 de la Ley Núm. 56 de 19 de junio de 1958, según enmendada, 22 L.P.R.A. sec. 909 (la Autoridad de Edificios Públicos); Art. 8 de la Ley Núm. 62 de 10 de junio de 1974, según enmendada, conocida como la Ley de las Navieras de Puerto Rico, 23 L.P.R.A. sec. 3058; Art. 5 de la Ley Núm. 17

cluían el pago de arbitrios, toda vez que el arbitrio es un impuesto sobre el privilegio de usar determinados artículos en Puerto Rico y, en esa medida, constituiría un impuesto impermisible sobre las actividades de la corporación pública. Véase *P.R. Telephone Co. v. Tribl. Contribuciones,* 68 D.P.R. 154 (1948). La aprobación de estas exenciones respondió a una política pública para minimizar los gastos de las corporaciones referidas y así ampliar el capital disponible para la gestión pública que se les encomendó.

No cabe duda de que al derogar de forma expresa el Art. 51(a)(4) de la Ley de Arbitrios de 1956, *supra,* y al no incluir una sección similar, la Ley de Arbitrios de 1987 eliminó la exención genérica que beneficiaba a aquellas entidades gubernamentales cuya ley habilitadora no contenía una exención específica. Sec. 11.004 de la Ley Núm. 5 de 8 de octubre de 1987; 13 L.P.R.A. sec. 7001n. En consecuencia, la nueva ley sujetó al pago de arbitrios a todas aquellas agencias e instrumentalidades públicas que dependían del derogado Art. 51(a)(4), *supra,* para su exención de estos impuestos.

No es menos cierto, sin embargo, que la mera derogación de ese artículo no tuvo, por sí sola, el efecto de eliminar las exenciones de aquellas corporaciones públicas exentas por virtud de sus propias leyes habilitadoras y no por la derogada Ley de Arbitrios de 1956. El efecto de la nueva ley sobre estas últimas exenciones es más difícil de precisar, toda vez que ésta no contiene sección alguna que derogue o enmiende expresamente las disposiciones perti-

---

de 23 de septiembre de 1948, según enmendada, 7 L.P.R.A. sec. 553 (Banco Gubernamental de Fomento para Puerto Rico); Arts. 4 y 23 de la Ley Núm. 90 de 21 de junio de 1966, conocida como la Ley de la Compañía de Desarrollo Cooperativo de Puerto Rico, 5 L.P.R.A. secs. 981c y 981v; Arts. 15 y 22 de la Ley Núm. 63 de 30 de mayo de 1973, conocida como la Ley de la Corporación para el Desarrollo Rural de Puerto Rico, 5 L.P.R.A. secs. 1715 y 1721; Art. 14 de la Ley Núm. 62 de 30 de mayo de 1973, según enmendada, conocida como la Ley de la Administración de Servicios Agrícolas de Puerto Rico, 5 L.P.R.A. sec. 1806, y el Art. 12 de la Ley Núm. 33 de 7 de junio de 1977, conocida como la Ley de la Administración de Fomento y Desarrollo Agrícola de Puerto Rico, 5 L.P.R.A. sec. 1856.

nentes de las referidas leyes habilitadoras. 31 L.P.R.A. sec. 6. Cualquier derogación o enmienda de estas disposiciones sólo puede ser, por lo tanto, el resultado de una derogación tácita por parte de la Ley de Arbitrios de 1987. 31 L.P.R.A. sec. 6. Sabido es, por supuesto, que nuestro ordenamiento jurídico no favorece las derogaciones tácitas. *Director I.C.P. v. Fitzgerald, etc.*, 130 D.P.R. 46 (1992); *McCrillis v. Aut. Navieras de P.R.*, 123 D.P.R. 113 (1989).

Ahora bien, no todas las leyes habilitadoras en cuestión son iguales. Si bien todas proveen exención contributiva, varias de ellas contienen, además, las dos (2) reglas siguientes: (1) que sus disposiciones prevalecerán sobre las de cualquier otra ley con las que estén en pugna, y (2) que ninguna ley posterior, que regule la administración del Gobierno estatal, les será aplicable, a menos que así lo disponga taxativamente. Véase 22 L.P.R.A. sec. 217.[22]

La primera de estas reglas constituye, en efecto, un requisito de derogación expresa, toda vez que invierte el principio general de derogación tácita en cuanto a que los términos de una ley posterior prevalecen sobre los términos incompatibles de una ley anterior. 31 L.P.R.A. sec. 6;

---

[22] Las leyes orgánicas siguientes contienen la disposición adicional sobre la inaplicabilidad de leyes sobre la administración del Gobierno estatal o sus dependencias, salvo disposición expresa en contrario: las Secs. 22 y 27 de la Ley Núm. 83 de 2 de mayo de 1941, según enmendada, conocida como la Ley de la Autoridad de Energía Eléctrica de Puerto Rico, 22 L.P.R.A. secs. 212(a) y 217; las Secs. 15 y 21 de la Ley Núm. 40 de 1 de mayo de 1945, según enmendada, conocida como la Ley de Acueductos y Alcantarillados de Puerto Rico, 22 L.P.R.A. secs. 155 y 161; los Arts. 18 y 22 de la Ley Núm. 125 de 7 de mayo de 1942, según enmendada, conocida como la Ley de la Autoridad de los Puertos de Puerto Rico, 23 L.P.R.A. secs. 348 y 352; las Secs. 22 y 26 de la Ley Núm. 212 de 12 de mayo de 1942, según enmendada, conocida como la Ley de la Autoridad de Comunicaciones de Puerto Rico, 27 L.P.R.A. secs. 312 y 316.

Las leyes siguientes meramente contienen una disposición sobre exención contributiva: el Art. 8 de la Ley Núm. 56 de 19 de junio de 1958, según enmendada, 22 L.P.R.A. sec. 909 (la Autoridad de Edificios Públicos); el Art. 8 de la Ley Núm. 62 de 10 de junio de 1974, según enmendada, conocida como la Ley de las Navieras de Puerto Rico, 23 L.P.R.A. sec. 3058; el Art. 5 de la Ley Núm. 17 de 23 de septiembre de 1948, según enmendada, 7 L.P.R.A. sec. 553 (Banco Gubernamental de Fomento para Puerto Rico).

*Díaz Marín v. Mun. de San Juan*, supra. Esta regla requiere precisamente el resultado contrario, a saber, que en caso de conflicto con una ley posterior, prevalezcan las disposiciones de estas leyes habilitadoras. Según la regla, por lo tanto, estas disposiciones parecen no admitir derogación tácita.

El propósito de esta primera regla es evidente, a saber: privilegiar a estas corporaciones públicas dentro del ordenamiento jurídico y requerir a la Asamblea Legislativa que considere específicamente el efecto de cualquier proyecto de ley sobre estas corporaciones y que, en aquellos casos en los que desee alterar el régimen legal de estas, así lo haga constar de forma expresa.

La segunda de las reglas establece el principio de hermenéutica siguiente: que ninguna ley anterior o posterior —que regule la administración del Gobierno estatal o sus agencias e instrumentalidades— deberá interpretarse como aplicable a la corporación pública en cuestión, a menos que así lo disponga taxativa o expresamente. Es evidente que el propósito de esta regla es asegurar que los asuntos y negocios de cada una de estas corporaciones se conduzcan de acuerdo con las disposiciones especiales de sus respectivas leyes habilitadoras, sin intromisión de otras leyes que puedan obstaculizar o impedir su gestión pública. Nuevamente, se requiere a la Asamblea Legislativa que haga constar claramente cuándo es que desea cambiar o afectar la manera en que estas corporaciones públicas conducen sus asuntos.

B. Como ya hemos señalado, la ley habilitadora de la Autoridad no sólo provee exención contributiva, sino también establece las dos (2) reglas anteriores. 22 L.P.R.A. secs. 212(a) y 217.

Desde su aprobación inicial el 2 de mayo de 1941, la Sec. 22(a) ha dispuesto que no se le requerirá a la Autoridad el pago de ningún impuesto o contribución sobre sus actividades, propiedades e ingresos, ello para facilitar la obten-

ción de los fines para los cuales fue establecida, entre los cuales figura el mejoramiento del bienestar general mediante la provisión de electricidad a precios razonables. 22 L.P.R.A. secs. 196(1) y 212(a).

Por otro lado, mediante la Ley Núm. 19 de 8 de abril de 1942 (22 L.P.R.A. sec. 191 *et seq.*), se dispuso: (1) que las Secs. 1 a la 27 de la ley orgánica prevalecerán sobre las disposiciones de cualquier otra ley con la que estén en pugna, y (2) que ninguna otra ley, anterior o posterior, que regule la administración del Gobierno estatal o sus dependencias deberá ser interpretada como aplicable a la Autoridad, a menos que así lo disponga taxativamente. 22 L.P.R.A. sec. 217.([23])

La controversia del caso de autos es precisamente el tipo para el cual la Asamblea Legislativa incluyó esta última disposición en la ley habilitadora de la Autoridad. La Sec. 2.005 de la Ley de Arbitrios de 1987, *supra*, contiene una imposición general de un arbitrio sobre combustible y la Sec. 22(a) de la ley habilitadora de la Autoridad contiene una exención específica de todo tipo de contribución, inclusive arbitrios. La Ley de Arbitrios de 1987 no contiene disposición alguna que expresamente enmiende la ley orgánica habilitadora para sujetar a la Autoridad al pago de arbitrios. A falta de derogación o enmienda expresa, la Sec.

---

([23]) La Sec. 27 de la ley orgánica de la Autoridad dispone que:

"En los casos en que las disposiciones de esta Ley [las secs. 191 a 217 de este título] estén en pugna con las disposiciones de cualquier otra ley de la Asamblea Legislativa de Puerto Rico, prevalecerán las disposiciones de esta Ley [secs. 191 a 217 de este título] y ninguna otra ley aprobada anterior o posteriormente, regulando la administración del Gobierno Estadual o de cualesquiera partes, oficinas, negociados, departamentos, comisiones, dependencias, municipalidades, ramas, agentes, funcionarios o empleados del mismo, será interpretada como aplicable a la Autoridad, a menos que así se disponga taxativamente, pero los asuntos y negocios de la Autoridad serán administrados conforme se provee en la presente Ley [secs. 191 a 217 de este título]." 22 L.P.R.A. sec. 217.

En su redacción original esta sección disponía como sigue:

"Sección 27.—En los casos en que las disposiciones de esta ley estén en pugna con las disposiciones de cualquier otra ley de la Asamblea Legislativa de Puerto Rico, regirán las disposiciones de esta ley." Sec. 27 de la Ley Núm. 83 de 2 de mayo de 1941.

La redacción actual proviene de una enmienda realizada mediante la Ley Núm. 19 de 8 de abril de 1942 (22 L.P.R.A. secs. 191–217).

27 de ley habilitadora es dispositiva, ya que requiere que la exención de la Sec. 22(a) prevalezca sobre la Sec. 2.005 de la Ley de Arbitrios de 1987, *supra*.(24)

El Departamento reconoce que éste es el resultado que requiere la Sec. 27 de la ley habilitadora de la Autoridad. Aduce, sin embargo, que la letra de dicha sección no debe ser dispositiva debido a que alegadamente uno (1) de los propósitos principales de la Ley de Arbitrios de 1987 era imponer arbitrios no sólo a la Autoridad, sino a todas las corporaciones públicas similarmente situadas. Sostiene, por lo tanto, que la intención de la nueva ley de arbitrios debe prevalecer sobre la letra de la ley habilitadora de manera que esta última quede tácitamente enmendada por la primera. A su entender, la falta de una enmienda expresa para excluir los arbitrios de la exención que concede la Sec. 22(a) de dicha ley habilitadora no es más que una inadvertencia de la Asamblea Legislativa que corresponde remediar a este Tribunal. No tiene razón.

En primer lugar, la letra de la Sec. 27 de la ley habilitadora de la Autoridad es clara al establecer que las disposiciones de dicha ley prevalecerán sobre las de cualquier otra ley con las que estén en pugna. En segundo lugar, ni la letra ni el historial legislativo de la Ley de Arbitrios de 1987 demuestran que la Asamblea Legislativa tenía la intención inequívoca de eliminar las exenciones en materia de arbitrios contenidas tanto en la ley habilitadora de la Autoridad como en otras leyes similares. Dicho historial revela, más bien, que a pesar de tener el conocimiento de la problemática de estas leyes, la Asamblea Legislativa optó por no aclarar su intención sobre el futuro de las exenciones allí concedidas. La falta de enmiendas expresas

---

(24) Este estado de derecho no es distinto al que existía entre la ley habilitadora de la Autoridad y la Ley de Arbitrios de 1956 antes de 1970. La Ley de Arbitrios de 1956 contenía imposiciones generales de arbitrios, mientras que la Sec. 22(a) de la ley habilitadora de la Autoridad contenía la misma exención contributiva vigente. No había duda entonces de que la ley habilitadora de la Autoridad prevalecía sobre la ley de arbitrios.

para eliminar estas exenciones no fue consecuencia de un mero error o inadvertencia del legislador. Veamos.

C. En su análisis legal del proyecto inicial, P. de la C. 1267, el entonces Secretario de Justicia, Hon. Héctor Rivera Cruz, llamó a la atención de la Asamblea Legislativa precisamente la problemática de las exenciones contenidas en las leyes habilitadoras de varias corporaciones públicas. En aquel entonces, el Secretario adelantó una posición sobre ésta totalmente contraria a la que ahora asume el Procurador General en representación del Departamento. Según el entonces Secretario de Justicia

[l]as leyes orgánicas vigentes de un sinnúmero de corporaciones públicas contienen disposiciones que eximen del pago de cualquier arbitrio que se imponga con posterioridad a la aprobación de esas leyes orgánicas. (Escolio omitido.)

La duda que se suscita de aprobarse el proyecto no se resuelve a base del principio de que una ley posterior cuyos términos sean tan inconsistentes con una ley anterior que no puedan subsistir juntas, deroga la anterior. (Cita omitida.) Ello es así ya que la medida que se está considerando no contiene disposición que sujete expresamente a todas las entidades gubernamentales, incluyendo las corporaciones públicas, al pago de arbitrios.

A falta de una disposición expresa puede interpretarse en el futuro que la intención es sujetar sólo aquellas corporaciones y entidades gubernamentales que no están exentas expresamente por una ley anterior. Las leyes orgánicas de ciertas corporaciones públicas, tales como la Autoridad de Energía Eléctrica y la Autoridad de Acueductos y Alcantarillados requieren que la Asamblea Legislativa indique expresamente las leyes que serán de aplicación a estas corporaciones y establecen que sus disposiciones prevalecerán sobre las disposiciones contrarias de otras leyes de expresamente aplicación general a menos que estas deroguen a aquéllas.

Para evitar esta confusión, sugerimos determinar si es la intención de que todas las agencias gubernamentales, corporaciones públicas y municipios estén sujetas [sic] al pago de arbitrios o si se intenta sujetar únicamente a las corporaciones públicas que se incluya en la propia Sección 3.021 una disposición expresa que recoja esa intención. Carta de 21 de septiembre de 1987 del Hon. Héctor Rivera Cruz, Secretario de Justicia, al

Hon. Juan Corujo Collazo, Presidente de la Comisión de Hacienda de la Cámara de Representantes, sobre el P. de la C. 1267, págs. 19–20.

A pesar de estos señalamientos, la Asamblea Legislativa nunca esclareció en la letra de la ley o en el historial legislativo cuál era su intención definitiva sobre las exenciones que le concedían a las corporaciones públicas sus respectivas leyes orgánicas.

Según indicó el Secretario de Justicia en su ponencia, el proyecto de administración presentado inicialmente, tanto en la Cámara como en el Senado (el P. de la C. 1267 y el P. del S. 1305), no contenía disposición alguna en torno a su efecto sobre las referidas exenciones. P. de la C. 1267 y P. del S. 1305 de 2 de septiembre de 1987, 10ma Asamblea Legislativa, 11ma Sesión Extraordinaria. Es decir, el proyecto no contenía una disposición que sujetara de forma expresa a las corporaciones públicas en cuestión al pago de arbitrios o que enmendara sus leyes orgánicas para lograr tal sujeción, ni una disposición que reconociera las exenciones provistas en tales leyes orgánicas.[25]

La Comisión de Hacienda de la Cámara, sin embargo, actuó en respuesta al señalamiento del Secretario de Justicia e incluyó en el proyecto una disposición para aclarar que las corporaciones públicas exentas por virtud de sus propias leyes habilitadoras continuarían exentas. Informe de la Comisión de Hacienda de la Cámara de Representantes sobre P. de la C. 1267 de 24 de septiembre de 1987, 10ma Asamblea Legislativa, 11ma Sesión Extraordinaria.[26] Este punto

---

[25] Ni el Informe del Secretario de Hacienda sobre Reforma Contributiva ni el Memorial Explicativo del Anteproyecto de Ley P. de la C. 1267 arrojan mucha luz sobre este asunto. Si bien dichos documentos señalan que un propósito de la reforma era eliminar la exención de las compras del Gobierno, en ningún momento se expresan sobre el efecto del proyecto propuesto sobre las exenciones de corporaciones públicas provenientes de sus propias leyes orgánicas. Véanse: Informe del Secretario de Hacienda sobre Reforma Contributiva, Agosto de 1987, págs. 60–70; Memorial Explicativo del Anteproyecto de Ley P. de la C. 1267, pág. 13.

[26] La enmienda a la Sec. 3.021 aprobada por la Cámara de Representantes disponía lo siguiente:

fue objeto de un extenso debate en el hemiciclo de la Cámara.

La controversia surgió a raíz de una aparente contradicción entre las exenciones de estas corporaciones públicas y las proyecciones de ingresos de la administración. Por un lado, el proyecto reconocía y pretendía no eliminar las exenciones referidas, pero, por otro, los ingresos estimados del proyecto parecían incluir arbitrios sobre artículos adquiridos precisamente por corporaciones públicas exentas. Aparentemente, no existía un desglose de los ingresos proyectados para cada entidad gubernamental que pudiera esclarecer este punto. Véase Debate sobre el P. de la C. 1267 (Diario de Sesiones de la Asamblea Legislativa (Cámara) 98 (1987). Transcribimos el siguiente intercambio entre la Hon. Zaida R. Hernández Torres y el Hon. Juan Corujo Collazo, entonces Presidente de la Comisión de Hacienda de la Cámara:

> Sr. Corujo Collazo: ... Y hay otras agencias, y específicamente las corporaciones públicas, que su ley habilitadora dispone que están exentas del pago de arbitrios al Gobierno, esas corporaciones públicas continuarán exentas y no tendrán que pagar ese arbitrio.

> Srta. Hernández Torres: ... nos parece que el número de agencias, instrumentalidades de gobierno y corporaciones públicas que a pesar de este Proyecto no van a pagar arbitrios, es un número considerable, y nos parece que esto va a reducir sustancialmente los treinta y cuatro millones que se esperan recaudar. En el caso específico de la Autoridad de Energía Eléctrica y la Autoridad de Acueductos y Alcantarillados, ¿hay la intención para lograr los recaudos necesarios para que estas agencias paguen arbitrios?

> Nuestra pregunta es si hay la intención expresa para lograr

---

"No obstante lo anteriormente dispuesto, cuando una corporación pública o instrumentalidad de gobierno, exenta de contribuciones en virtud de lo dispuesto en su ley habilitadora, introduzca o adquiera directamente del fabricante artículos sujetos al pago de impuestos de conformidad con el Capítulo II de esta Ley, la exención aplicará únicamente cuando la contribución exigible sobre los artículos introducidos o directamente adquiridos del fabricante, sea exigible a éstas." Informe de la Cámara de Representantes sobre el P. de la C. 1267 de 24 de septiembre de 1987, 10ma Asamblea Legislativa, 11ma Sesión Extraordinaria, pág. 3.

el recaudo de treinta y cuatro millones, de que la Autoridad de Acueductos y Alcantarillados y la Autoridad de Energía Eléctrica paguen arbitrios por las compras que efectúen.

Sr. Corujo Collazo: "No, lo que sucede es que esas entidades públicas, la ley habilitadora que las crea específicamente las exonera del pago de arbitrio. Y una de las enmiendas que se ha intercalado en este proyecto es que se exime a esas corporaciones de no pagar el arbitrio, o sea, que no tendrá ningún efecto el pago a esas corporaciones.

Srta. Hernández Torres: Lo que quiere decir es que se quedarían tal y como están en la ley vigente.

Sr. Corujo Collazo: Es correcto.

Srta. Hernández Torres: Aun así, ¿usted estima que se van a recaudar los treinta y cuatro millones de dólares?

Sr. Corujo Collazo: Yo creo que se van a recaudar menos, porque una enmienda que hemos incorporado exime inclusive a las maquinarias que es donde los municipios pagarían gran cantidad de arbitrio.... Diario de Sesiones, *supra*, págs. 98–99.

Aparentemente insatisfecho con esta respuesta, el Hon. José Granados Navedo reanudó luego esta línea de preguntas. Diario de Sesiones, *supra*, págs. 106–110. Esta vez, el Representante Corujo Collazo señaló que, a su entender, los ingresos proyectados en el informe preparado para la administración por sus consultores no incluían arbitrios pagados "a aquellas agencias que la ley habilitadora originalmente eximía y que actualmente están exentas también". Íd., pág. 108. Luego, sin embargo, admitió la posibilidad de que los consultores privados, erróneamente, hubiesen incluido a instrumentalidades exentas por sus propias leyes habilitadoras en las proyecciones de ingresos:

Sr. Granados Navedo: Y [el informe de los consultores] dice "todas las agencias". Sin embargo, por ley están exentas la Autoridad de Energía Eléctrica, la Autoridad de Acueductos, la Autoridad de Comunicaciones, la Corporación de Desarrollo y Recursos Minerales, el Banco Gubernamental de Fomento, la Compañía de Desarrollo Cooperativo, la Administración de Fomento y Desarrollo Agrícola, entre otras. O sea, que todo lo que estas entidades compren no van a poder ser gravados.

Sr. Corujo Collazo: Es correcto.

Sr. Granados Navedo: Y por tal razón, el cálculo de 39 millones original está mal.

Sr. Corujo Collazo: No necesariamente, porque se refiere a las otras agencias que no son esas.

Sr. Granados Navedo: No, eso no es lo que dice [el informe de los consultores] y eso no fue lo que dijo su asesor tampoco.

Sr. Corujo Collazo: No, "las otras agencias" se refieren a las ciento y pico de agencias del Poder Ejecutivo que no están incluidas entre las exentas por una ley habilitadora, un ejemplo de ella, la Autoridad...

Sr. Granados Navedo: Pero a lo que se refería Booz-Allen [la compañía consultora] era a todas las agencias del gobierno, a todas. A todas las agencias, instrumentalidades, corporaciones y municipios.

Sr. Corujo Collazo: Por eso digo, compañero que se referían mas bien a aquellas agencias que ahora al imponerles el impuesto tendrían que pagarlo por disposición de ley, pero no incluye a aquellas agencias que la ley habilitadora originalmente les eximía y que actualmente están exentas también.

Sr. Granados Navedo: No cree usted que pudo haber una cosa distinta, que Booz-Allen se dejó llevar precisamente por lo que usted nos señaló ahorita, por las compras de todas las agencias, y a base de eso tiró los números y quizás no estaba consciente, error humano, yo mismo no sabía eso hasta el día de hoy precisamente, de que habían una serie de entidades gubernamentales que la ley habilitadora impide que se les pueda hacer este tipo de imposición a menos que se mencione cada agencia particularmente, una a una.

Sr. Corujo Collazo: Eso es así.

Sr. Granados Navedo: Y que es posible que haya sido una inadvertencia, y que al hacer el cálculo de 39 millones de dólares posiblemente Booz-Allen no estaba consciente en ese momento de que no se le podía imponer a una serie de agencias.

Sr. Corujo Collazo: Cabe la posibilidad de un error. No estoy admitiendo que pueda haber error en el cómputo porque estamos hablando de un número, que es el dato que se nos ofrece, pero no tenemos ante nosotros el desglose de cómo se llegó al mismo. Diario de Sesiones, *supra*, págs. 107–108.

Ante esta interrogante, el Representante Granados Navedo expuso los requisitos para poder sujetar a estas instrumentalidades al pago de arbitrios y solicitó una mani-

festación definitiva sobre el futuro de las exenciones contenidas en sus leyes orgánicas:

Todo parece indicar que ha habido un error muy serio en el estimado de los ingresos que se percibirán como resultado de esta ley y la forma en que la misma habrá de contribuir a balancear las pérdidas por un lado y los ingresos por el otro. Yo quiero señalarle al compañero Corujo Collazo que la información que tenemos es que al computar los 39 millones de dólares se usó, se hizo un cómputo a base de las compras de todas las agencias de gobierno, de todas las corporaciones, de todas las instrumentalidades y de todos los municipios, ... quizás no se percataron [los consultores] de que había una serie de corporaciones públicas que su ley habilitadora señala que no se les puede hacer ese tipo de imposición a menos que se mencione específicamente la agencia, pero que cualquier disposición de la ley habilitadora no podrá dejar de tener efecto o ser sobreseída. O sea, enmendado, o cambiado en forma alguna por una disposición general de ninguna ley. Que para que pueda cambiarse la relación existente entre la sociedad, el estado y esa corporación pública en particular, tiene que haber una enmienda específica, que mencione específicamente a esa entidad pública. Por lo que una disposición de esta naturaleza que lo que dice es que "todas las agencias del gobierno, etc., pagarán el 6.6", no se le aplica a ninguna corporación pública que tenga en su ley habilitadora esa disposición, y eso incluye Energía Eléctrica, eso incluye Acueductos... quiere decir que tiene que haber una merma considerable porque estamos hablando de empresas que son precisamente las más técnicas, las que más equipo compran, y equipo más caro, por lo que podemos estar hablando de una cantidad sustancial, y que haya una merma bien sustancial en ese estimado de lo que habrá de recaudarse, por lo que entendemos que para subsanar ese asunto no se subsana con una enmienda a toda carrera, como la que se tuvo que hacer, porque cuando se dieron cuenta de esto, imagínese si no estaban conscientes de que no estaba en el Proyecto, en el Proyecto las gravaba todas, y cuando se dieron cuenta que la ley habilitadora impiden que se graven entonces vinieron con una enmienda, con la enmienda que dicen ¡ah!, si Energía Eléctrica lo que tiene que hacer es ponerse ella como consignataria para no pagar, para no gravar de esa forma Energía Eléctrica y respetar lo que dice la ley habilitadora, ¿pero, qué ocurre si respeta la ley habilitadora? Que se cae el estimado de ingreso, se viene al piso el estimado de ingreso, así que aquí va a haber que tomar una decisión fundamental y que en caso de reforma contributiva yo sé que la Cámara no lo puede tomar en forma inconsulta, hay

que tomar una decisión fundamental: si vamos a hacer que esas entidades paguen, y de esa manera mantener el estimado de ingresos, o si vamos a reconocer que están exentas, en cuyo caso tenemos que revisar el estimado de ingresos y si revisamos el estimado de ingresos entonces esa ley de Contribución sobre Ingreso que va a ser aprobada mañana no va a tener recursos suficientes, por lo que no se podría aprobar. Diario de Sesiones, *supra*, págs. 108–109.

Por su parte, el Hon. David Noriega Rodríguez hizo los señalamientos siguientes:

Pero si tenía alguna duda [en cuanto al proyecto], el dato que trae el compañero Granados Navedo, y nace de una ponencia que dio ante la Comisión el Secretario de Justicia, Rivera Cruz, en el sentido de que hay muchas corporaciones que ya están exentas, y que por lo tanto es un error considerar los cálculos de ingresos de esas corporaciones, porque es que en la actualidad no pagan, me parece que lo menos que merecía era un poco más de estudio; y merecía ese poco más de estudio porque si en algo ha sido consistente el Secretario de Hacienda ha sido en su debilidad de hacer cálculos de ingresos. ... y todo parece indicar que se equivocó al calcular los ingresos provenientes del pago de arbitrios del Gobierno, porque ya muchísimas corporaciones públicas y agencias están exentas. No se puede legislar en esta forma, hay por lo menos darle crédito al Secretario de Justicia, eso está por escrito, eso está en la ponencia del Secretario de Justicia. Diario de Sesiones, *supra*, pág. 112.[27]

No obstante estos señalamientos sobre la posible incorrección de los estimados de ingresos, la Cámara aprobó el

---

[27] El Representante Granados Navedo hizo este último pronunciamiento en cuanto al asunto en cuestión:

"Hemos hecho el planteamiento de que no se tomó en consideración al determinar el estimado de ingresos provenientes de este Proyecto que estamos considerando el que muchas de las agencias, principalmente agencias que compran equipo sumamente costoso y que están empeñadas desde hace años en un amplio programa de expansión, como es la Autoridad de Comunicaciones, no podría gravársele con este arbitrio y por tal razón el estimado de ingreso que se ha hecho resulta ser errado, y que esto trastoca esa meta de la reforma contributiva neutra, por lo que hay que tomar una determinación de si se va a permitir que esas corporaciones continúen disfrutando de la exención de acuerdo a lo que dispone una enmienda que se está aprobando en este Proyecto o si por el contrario habrá de hacer la contribución correspondiente y de esa manera mantener los estimados." Diario de Sesiones de la Asamblea Legislativa (Cámara) Debate en la Cámara de Representantes sobre el P. de la C. 1267 de 24 de septiembre de 1987, pág. 113.

P. de la C. 1267 con la enmienda a la Sec. 3.021 para reconocer las exenciones contenidas en las leyes orgánicas de varias corporaciones públicas. Texto de Aprobación Final por la Cámara de Representantes del P. de la C. 1267 de 24 de septiembre de 1987, *supra.*

La Comisiones de Hacienda y de Industria, Comercio y Turismo del Senado, por su parte, eliminaron la referida enmienda y no sustituyeron otra disposición en su lugar en torno al efecto del proyecto sobre las referidas exenciones. Informe Conjunto de la Comisión de Hacienda y de la Comisión de Industria, Comercio y Turismo del Senado de Puerto Rico sobre el P. de la C. 1267, equivalente al P. del S. 1305 de 26 de septiembre de 1987, pág. 2.[28] Durante el debate en el hemiciclo, los senadores no discutieron la controversia sobre las proyecciones de ingresos y las exenciones de las corporaciones públicas que había surgido en la Cámara. En su presentación del proyecto, el entonces Presidente de la Comisión de Hacienda del Senado, Hon. Miguel Deynes Soto, hizo el único pronunciamiento que sugiere de forma directa que una de las intenciones del

---

[28] En su parte pertinente, el Informe Conjunto de la Comisión de Hacienda y de la Comisión de Industria, Comercio y Turismo del Senado dispone que:

"La exención vigente sobre los artículos adquiridos por las distintas agencias e instrumentalidades del Gobierno de Puerto Rico y los municipios se ha modificado para limitarla únicamente a los vehículos de motor para uso oficial. Los otros artículos, equipo, materiales y maquinarias que adquieran las agencias e instrumentalidades gubernamentales y los municipios, estarán sujetos al pago de arbitrios a partir de la fecha de la vigencia del nuevo estatuto." Informe Conjunto de la Comisión de Hacienda y de la Comisión de Industria, Comercio y Turismo del Senado de Puerto Rico sobre el P. de la C. 1267, equivalente al P. del S. 1305, 26 de septiembre de 1987, pág. 20.

Esta expresión, a pesar de manifestar una intención general de modificar "la exención vigente", no especifica si la propuesta modificación se extiende a las exenciones expresamente concedidas a varias corporaciones públicas por sus respectivas leyes habilitadoras. De hecho, esta expresión es idéntica a la contenida en el Informe de la Comisión de Hacienda de la Cámara y el proyecto aprobado por la Cámara; contrario al aprobado por el Senado, contenía una disposición particular en reconocimiento de las exenciones provistas en las leyes habilitadoras de las corporaciones públicas. Es claro, por lo tanto, que en la Cámara, ésta expresión no podía referirse a estas exenciones.

A nuestro juicio, esta falta de especificidad en torno a las exenciones particulares a ser afectadas impide una determinación definitiva sobre la intención del Senado al eliminar la disposición añadida por la Cámara sobre este particular.

Senado era eliminar la exención de las corporaciones públicas:

> Sr. Deynes Soto: ... Esta medida también tiene una implicación sumamente importante para todos los puertorriqueños y para los compañeros Senadores en el sentido de que nosotros estamos eliminado a través de la misma el pago de impuesto o la exención que existe actualmente de pago de impuestos a las agencias gubernamentales, a las corporaciones públicas. Y se mantiene únicamente esa exención para los que se disponen como vehículos de motor usados oficialmente por nuestros funcionarios gubernamentales". Diario de Sesiones de la Asamblea Legislativa (Senado), 26 de septiembre de 1987, 1987, sobre el P. de la C. 1267, pág. 350.[29]

A pesar de esta manifestación, el proyecto aprobado por el Senado no superó los señalamientos de la ponencia del Secretario de Justicia. Al eliminar la enmienda aprobada por la Cámara sin sustituirla por otra, el Senado regresó el proyecto a la misma falta de claridad que había llevado al Secretario de Justicia a sugerir que se precisara una intención definitiva sobre las exenciones de las corporaciones públicas y que la decisión final se plasmara de forma expresa en el proyecto. Véase Texto de Aprobación Final por el Senado de Puerto Rico del P. del S. 1305 de 26 de septiembre de 1987.

En conferencia prevaleció el proyecto aprobado por el Senado. Informe de Conferencia sobre el P. de la C. 1267 de 27 de septiembre de 1987. El Informe de Conferencia no revela la discusión sobre este asunto ni contiene manifestación alguna sobre la intención de los integrantes de la Comisión de Conferencia. Íd.

---

[29] El senador Américo Martínez Cruz, por su parte, señaló que "[l]as agencias de gobierno con la nueva ley o con la nueva legislación no va a tener la exención contributiva que tenían, excepto algunos equipos como son los automóviles". Diario de Sesiones de la Asamblea Legislativa (Senado), 26 de septiembre de 1987, sobre el P. de la C. 1267, pág. 358. Esta expresión no aclara la controversia, toda vez que de ésta no surge si la exención a que se refiere incluye las exenciones específicas dispuestas en las leyes habilitadoras de varias corporaciones públicas, o si, por otro lado, se limita a la exención genérica del Art. 51(a)(4) de la Ley de Arbitrios de 1956, *supra*.

Ante este historial legislativo, no podemos colegir una intención inequívoca de derogar las exenciones en materia de arbitrios contenidas en las leyes habilitadoras de un sinnúmero de corporaciones públicas. Nuestro examen revela, más bien, que la Asamblea Legislativa estaba consciente de la problemática presentada por dichas leyes orgánicas y que no actuó conforme a la sugerencia del Secretario de Justicia para incluir en la letra de la ley una manifestación expresa en torno a su intención sobre este particular.

Podemos imaginar varias posibles explicaciones para la eliminación de la enmienda de la Cámara por parte del Senado y de la Comisión de Conferencia. Por un lado, es posible que el Senado haya entendido que la enmienda era redundante, toda vez que las leyes habilitadoras de las corporaciones públicas en cuestión contenían exenciones contributivas específicas. Por otro lado, también es posible que la eliminación haya respondido a una intención verdadera de sujetar a todas esas corporaciones públicas al pago de arbitrios. Los pronunciamientos de varios representantes sugieren que, a su entender, la ausencia de una imposición expresa de arbitrios implica que las exenciones continuarían intactas, mientras que el pronunciamiento del Senador Deynes Soto sugiere lo contrario. No descartamos, por último, que la Asamblea Legislativa deliberadamente haya evitado aclarar su intención, ya sea en el texto de la ley o en el historial legislativo, para dejar así el asunto en manos de una decisión futura del Secretario de Hacienda.

▮ Ante el silencio de la letra de la Ley de Arbitrios de 1987 y la falta de una clara directriz en su historial legislativo, entendemos que el único curso prudente de acción es seguir la letra clara de la Ley de la Autoridad de Energía Eléctrica de Puerto Rico y concluir que, en ausencia de disposición expresa en contrario, la exención contenida en su Sec. 22(a) prevalece sobre la Sec. 2.005 de la Ley de Arbitrios de 1987, *supra*. Resolvemos, por lo tanto, que

la ley habilitadora de la Autoridad la exime del arbitrio que impone la Sec. 2.005 de la Ley de Arbitrios de 1987, *supra*, y que el tribunal de instancia actuó correctamente al ordenar el reintegro a Caribbean Petroleum de los arbitrios pagados sobre el destilado liviano vendido a la Autoridad conforme al segundo contrato de abastecimiento entre ellos, contrato que otorgaron luego de la aprobación de la nueva ley de arbitrios.

D.  Al disponer así de esta controversia, no estamos mas que que poniendo en vigor el mandato de la Ley de la Autoridad de Energía Eléctrica de Puerto Rico en cuanto a que cualquier alteración en su ordenamiento legal debe constar claramente en una ley posterior. La importancia de este requisito es obvia, una vez consideramos los posibles efectos económicos de derogar la exención de la Autoridad y así gravar con arbitrios el combustible utilizado para generar electricidad. Tal derogación no sólo puede afectar la habilidad de la Autoridad para dar servicio a su deuda pública, sino también puede acarrear aumentos tarifarios para cubrir las nuevas obligaciones contributivas. La Asamblea Legislativa puede efectuar esta derogación, pero, conforme a la ley habilitadora de la propia Autoridad, lo debe hacer de tal forma que quede clara su intención de alterar el régimen legal de la Autoridad. Conforme a la normativa explicada anteriormente, corresponde a la Asamblea Legislativa derogar de forma expresa la exención de la Autoridad, así como de las de otras corporaciones públicas similarmente situadas, si esa es su intención.

IV

Atendemos, por último, el señalamiento sobre la alegada prescripción de las solicitudes de reintegro de cantidades individuales que suman el total de trescientos noventa y nueve mil veintinueve dólares con setenta y seis centavos ($399,029.76), retenidas en concepto de arbitrios

por el destilado liviano vendido a raíz del primer contrato de suministro entre Caribbean Petroleum y la Autoridad.

Es un hecho incontrovertido que a pesar de que este primer contrato se realizó durante la vigencia de la Ley de Arbitrios de 1956, Caribbean Petroleum no entregó el destilado liviano a la Autoridad hasta después de que la nueva ley entrara en vigor. Por lo tanto, tenemos que referirnos a las disposiciones de la Ley de Arbitrios de 1987 para determinar si las solicitudes de reintegro —aquí en cuestión— están o no prescritas.[30] De los documentos presentados por la propia Caribbean Petroleum se desprende que ésta presentó esas solicitudes después de pasados ciento ochenta (180) días de las fechas de entrega del destilado liviano, pero antes de haberse cumplido cuatro (4) años de tales fechas. Solicitud de revisión, Caso Civil Núm. KCO-90-0032, anejo K.

El Departamento sostiene que las referidas solicitudes de reintegro están prescritas porque Caribbean Petroleum las presentó fuera del término de ciento ochenta (180) días que dispone la Sec. 3.003 de la Ley de Arbitrios de 1987. Según esta sección, toda persona interesada en el reintegro del "arbitrio pagado sobre cualquier artículo exento bajo este subtítulo [esta ley] deberá radicar [sic] su solicitud de reintegro ... dentro de los ciento ochenta (180) días siguientes a la fecha de entrega de los artículos a la persona exenta". 13 L.P.R.A. sec. 7103 (ed. 1989); Véase, además, Art. 3.003 del Reglamento Núm. 3890 de 13 de marzo de 1989, Reglamento para la Administración y Aplicación de la Ley de Arbitrios del Estado Libre Asociado de Puerto Rico de 1987, págs. 74–75.[31]

---

[30] De haberse entregado el destilado liviano durante la vigencia de la Ley de Arbitrios de 1956, el período prescriptivo aplicable hubiese sido el de sesenta (60) días que disponía el Art. 51(a) de la referida ley. 13 L.P.R.A. ant. sec. 4051(a).

[31] En una moción informativa ante el tribunal de instancia, el Departamento admitió que "[s]i la recurrente [Caribbean Petroleum] hubiese solicitado el reintegro de la cantidad desglosada en el Anejo I ($399,029.76) dentro del término provisto por la ley, si [sic] le hubiese concedido". Moción Informativa sobre Cantidades Reclamadas, Caso Civil Núm. K-CO-90-0023.

Caribbean Petroleum, por su parte, sostiene que sus solicitudes fueron oportunamente presentadas dentro del período de prescripción de cuatro (4) años que provee la Sec. 7.001 de la ley, 13 L.P.R.A. sec. 7301, para reclamar el reintegro de arbitrios pagados indebidamente o en exceso de lo debido.([32]) Es su contención que éste es el período prescriptivo aplicable debido a que, a su entender, el pago de arbitrios sobre el destilado liviano vendido a la Autoridad constituye "un pago indebido", según este término se define en el Art. 7.001(A) del reglamento aprobado por el Departamento de Hacienda para implantar la Ley de Arbitrios de 1987. Art. 7.001(A) del Reglamento Núm. 3890 de 13 de marzo de 1989, pág. 193. No podemos suscribir esta posición.

Según el Art. 7.001(A) del referido reglamento Núm. 3890, el término "pago indebido o en exceso de la cantidad debida" significa:

> ...aquel pago que resultare mayor al arbitrio fijado por Ley y originado por ajustes en la base contributiva, o por errores aritméticos en la determinación del impuesto del impuesto, o por ausencia de responsabilidad contributiva respecto a determinado artículo en su primera modalidad contributiva.

El mismo artículo, sin embargo, excluye de la definición a todos aquellos arbitrios pagados que luego son reembolsados porque las transacciones en cuestión encerraron a personas exentas. Reglamento Núm. 3890, *supra*. La parte pertinente del artículo dispone que "[l]os reembolsos origi-

---

([32]) Dispone la Sec. 7.001 de la Ley de Arbitrios de 1987 que:

"Cuando un contribuyente que crea que ha pagado o que se le ha cobrado indebidamente o en exceso de la cantidad debida cualquier impuesto fijado en este subtítulo [esta ley], podrá solicitar por escrito al Secretario el reintegro dentro del término y conforme al procedimiento establecido en este subtítulo [esta ley] ...

"No se concederá reintegro alguno, a menos que la persona demuestre a satisfacción del Secretario que sufrió el peso económico del pago de la contribución. Tampoco se concederá reintegro después de transcurridos cuatro (4) años desde la fecha del pago del impuesto, ni deberá el monto del mismo exceder la parte que se hubiere pagado durante los cuatro (4) años inmediatamente anteriores a la concesión del reintegro." 13 L.P.R.A. sec. 7301 (ed. 1989). Véase, además, el Art. 7.001(A) del Reglamento Núm. 3890 de 13 de marzo de 1989.

nados por transacciones con personas exentas no se considerarán productos de pagos indebidos o en exceso". (Énfasis suplido.) Íd., pág. 193.

Caribbean Petroleum sostiene que, conforme a esta definición reglamentaria, su pago de arbitrios constituye "un pago indebido" porque el destilado liviano vendido a la Autoridad carece de responsabilidad contributiva en su primera modalidad; es decir, porque el artículo, de por sí, está exento de contribuciones. En cuanto a la exclusión de arbitrios pagados en transacciones con personas exentas, Caribbean Petroleum aduce que ésta es inaplicable en este caso porque, a su entender, la Autoridad no cualifica como una "persona exenta", según este término es definido en la ley y en el reglamento. No estamos de acuerdo.

En primer lugar, al momento del otorgamiento del primer contrato, el destilado liviano estaba sujeto a la responsabilidad contributiva en su primera modalidad. Los Arts. 10 y 37 de la Ley de Arbitrios de 1956 disponían claramente que el destilado liviano era un artículo tributable. 13 L.P.R.A. ants. secs. 4010 y 4037. Si bien la venta de destilado liviano a la Autoridad no generaba responsabilidad contributiva, ello era así porque la Autoridad estaba, y aún continúa, exenta del pago de arbitrios, no porque el artículo en sí estuviera exento. Cualquier otro comprador no exento estaba obligado a pagar los arbitrios impuestos por los referidos artículos de la antigua Ley de Arbitrios.

En segundo lugar, la exclusión de pagos reembolsados por su origen en transacciones con personas exentas sí es aplicable al caso de autos. Contrario a la posición de Caribbean Petroleum, la Autoridad cualifica como una persona exenta para fines de la Ley de Arbitrios de 1987 y el reglamento que la implanta, por lo cual la venta de destilado liviano a la Autoridad constituye "una transacción con persona exenta". En consecuencia, los arbitrios pagados por Caribbean Petroleum sobre dicho combustible no constitu-

yen "pagos indebidos o en exceso de lo debido", según el Art. 7.001(A) del reglamento, *supra*, define este término.

La Sec. 1.002(13) de la Ley de Arbitrios de 1987 define el término "persona exenta" como "toda persona que, por razón de su condición y de acuerdo a los requisitos y disposiciones de este subtítulo [esta ley], esté legalmente capacitada para adquirir artículos tributables sin necesidad de pagar los impuestos establecidos en este subtítulo". (Énfasis suplido.) 13 L.P.R.A. sec. 7002(13) (ed. 1989). Una definición similar dispone el Art. 1.004(18) del Reglamento Núm. 3890, *supra*, pág. 5.

Caribbean Petroleum propone que enfaticemos la segunda parte de la cláusula "por razón de su condición y de acuerdo a los requisitos y disposiciones de este subtítulo [esta ley]", y resolvamos que la definición de "persona exenta" sólo incluye a personas exentas por virtud de la propia ley de arbitrios. 13 L.P.R.A. sec. 7103 (ed. 1989). Esta limitación le permite argumentar que la Autoridad, la cual está exenta por virtud de su propia ley habilitadora y no por la Ley de Arbitrios de 1987, no cualifica como una "persona exenta" y que, por lo tanto, la venta de destilado liviano a la Autoridad no cualifica como una "transacción con persona exenta" para fines de exclusión de la definición de "pago indebido o en exceso".

A nuestro juicio, sin embargo, la parte de la cláusula que dispone de este caso es la primera: "toda persona que, por razón de su condición." 13 L.P.R.A. 7.002(13) (ed. 1989). Cierto es que la Autoridad no recibe su exención de la Ley de Arbitrios de 1987, pero su "condición" de corporación pública exenta, por virtud de su propia ley habilitadora, de todo tipo de contribución e impuesto, la capacita legalmente para adquirir artículos tributables sin necesidad de pagar arbitrios sobre estos. Ninguna disposición de la nueva ley de arbitrios contraviene esta exención. Entendemos, por lo tanto, que según definido en la Sec. 1.002(13),

el término "persona exenta" incluye a la Autoridad. 13 L.P.R.A. sec. 7002(13) (ed. 1989).

En consecuencia, los arbitrios pagados por Caribbean Petroleum sobre el destilado liviano para ser vendido a la Autoridad no constituyen "pagos indebidos o en exceso de lo debido", toda vez que caen dentro de la exclusión reglamentaria de arbitrios pagados y luego a ser reembolsados por su origen en "transacciones con personas exentas". Art. 7.001(A) del Reglamento Núm. 3890 de 13 de marzo de 1989, pág. 193. Por ende y contrario a la posición de Caribbean Petroleum, el período prescriptivo para reclamar el reintegro de estos arbitrios no es el período de cuatro (4) años que dispone la Sec. 7.001 de la ley para reclamar reintegro de "pagos indebidos o en exceso de lo debido". 13 L.P.R.A. sec. 7301 (ed. 1989).

Ahora bien, esta determinación no implica necesariamente que el Departamento tenga razón en su argumento de que el período aplicable es el de ciento ochenta (180) días que dispone la Sec. 3.003 de la ley para reclamar el reintegro de arbitrios pagados sobre artículos exentos bajo ésta. 13 L.P.R.A. sec. 7103 (ed. 1989); Véase, además, Art. 3.003 del Reglamento Núm. 3890 de 13 de marzo de 1989, págs. 74–75. A nuestro juicio, éste no es el término aplicable a las solicitudes de reintegro aquí en cuestión, toda vez que dicha Sec. 3.003 se refiere a arbitrios pagados sobre artículos exentos bajo la Ley de Arbitrios de 1987 y el destilado liviano vendido a la Autoridad por Caribbean Petroleum no es, de por sí, un artículo exento bajo esta ley. Si bien la Autoridad está legalmente capacitada para adquirirlo libre de impuestos, como regla general el destilado liviano sí está sujeto al arbitrio de la Sec. 2.005 sobre *gas oil* o *diesel oil*. 13 L.P.R.A. secs. 7055 y 7103.

Entendemos, por consiguiente, que el período prescriptivo aplicable en este caso es el de ciento veinte (120) días que dispone la Sec. 7.001 de la ley. Según la parte pertinente de esta sección, "cualquier contribuyente que venda

un artículo a una persona exenta del pago de impuestos podrá solicitar por escrito al Secretario el reintegro de la cantidad pagada no más tarde de los ciento veinte (120) días siguientes a la fecha de venta o de entrega del artículo lo que ocurra primero". 13 L.P.R.A. sec. 7301 (ed. 1989).[33]

A diferencia de la Sec. 3.003, la Sec. 7.001 no se refiere al reintegro de arbitrios pagados sobre artículos exentos bajo la Ley de Arbitrios de 1987, sino que más bien a aquéllos pagados a raíz de un tipo de transacción específica, a saber, la venta de artículos a personas exentas. La venta de destilado liviano a la Autoridad es precisamente la venta de un artículo tributable a una persona exenta del pago de impuestos, por lo que aplica el período más corto de ciento veinte (120) días de la referida Sec. 7.001.

Es un hecho incontrovertido que Caribbean Petroleum presentó las solicitudes de reintegro aquí en cuestión después de pasados ciento veinte (120) días de la entrega del destilado liviano a la Autoridad. Resolvemos, por lo tanto, que el tribunal de instancia erró al no resolver que la reclamación de la suma total de trescientos noventa y nueve mil veintinueve dólares con setenta y seis centavos ($399,029.76), retenida en concepto de arbitrios por el destilado liviano vendido a la Autoridad a raíz del primer contrato y entregado durante la vigencia de la Ley de Arbitrios de 1987, estaba prescrita.

V

En resumen, la Autoridad está exenta del pago de arbitrios por virtud de su propia ley habilitadora y la aproba-

---

[33] Existe una discrepancia entre el período que dispone la Sec. 7.001 de la Ley de Arbitrios de 1987, *supra*, y el artículo correspondiente del Reglamento Núm. 3890. La ley provee que el período será de ciento veinte (120) días, mientras que el Art. 7.001(B) del reglamento provee que será ciento ochenta (180) días. 13 L.P.R.A. sec. 7301 (ed. 1989); Art. 7.001(B) del Reglamento Núm. 3890 de 13 de marzo de 1989, pág. 194. Es claro que la disposición de ley prevalece sobre la reglamentaria.

ción de la Ley de Arbitrios de 1987 no alteró en forma alguna esta exención.

En consecuencia, concluimos que la Autoridad está exenta del arbitrio que impone la Sec. 2.005 de la Ley de Arbitrios de 1987, *supra*, y que procede ordenar al Departamento reintegrar a Caribbean Petroleum las sumas de ciento ochenta y dos mil novecientos ochenta y cuatro dólares ($182,984.00) y un millón treinta y tres mil setecientos treinta y seis dólares ($1,033,736.00), ambas previamente consignadas por concepto de arbitrios sobre el destilado liviano entregado por Caribbean Petroleum a la Autoridad en cumplimiento del segundo contrato de abastecimiento suscrito por ellas. Conforme a la Sec. 7.003 de la Ley de Arbitrios de 1987, el Departamento no estará obligado a pagar intereses sobre estas sumas. 13 L.P.R.A. sec. 7303 (ed. 1989).[34]

Concluimos, además, que Caribbean Petroleum solicitó el reintegro de las cantidades individuales que suman el total de trescientos noventa y nueve mil veintinueve dólares con setenta y seis centavos ($399,029.76), consignadas por el concepto de arbitrios por el destilado liviano vendido a la Autoridad a raíz del primer contrato, después de pasado el período de ciento veinte (120) días que dispone la Sec. 7.001 de la Ley de Arbitrios de 1987, *supra*. Por lo tanto, el Departamento no está legalmente obligado a reintegrar esta cantidad.

---

[34] Dispone la Sec. 7.003 de la Ley de Arbitrios de 1987 que:

"Los reintegros que se concedan administrativa o judicialmente de acuerdo a este subtítulo devengarán intereses a razón del seis (6) por ciento anual sobre el monto de la cantidad reintegrada, computados desde la fecha del pago del impuesto objeto del reintegro y hasta una fecha que anteceda, por no más de treinta (30) días, a la fecha del cheque de reintegro. Los reintegros que se concedan por impuestos pagados en transacciones con o por personas exentas, no devengarán intereses.

"El monto de tales reintegros con sus intereses, más las costas del procedimiento judicial, si las hubiere, serán pagados por el Secretario." 13 L.P.R.A. sec. 7303 (ed. 1989).

*Se dictará sentencia de conformidad.*

El Juez Asociado Señor Rebollo López, a pesar de estar *conforme* con las Partes I, II y III de la opinión emitida por el Tribunal, *disiente* de la conclusión a que se llega en la Parte IV de la misma y, en consecuencia, disiente del último párrafo de la Parte V por entender que la solicitud de reintegro de la suma total de $399,029.76 que hiciera la demandante recurrida Caribbean Petroleum Co. *no* fue hecha fuera de término.