Colón Birriel, Juez Ponente
*1119 TEXTO COMPLETO DE LA SENTENCIA
I
Roberto Negrón Pérez (Negrón Pérez), su esposa Marilyn N. Ayala y la Sociedad Legal de Gananciales compuesta por ambos, entonces demandantes, (los “apelantes” o los esposos “Negrón-Ayala”) solicitan la revocación de una Sentencia emitida por el Tribunal de Primera Instancia, Subsección de Distrito, Sala de Adjuntas, (el “Tribunal”), el 3 de febrero de 2000 y archivada en autos copia de su notificación el 10 de febrero. Apelación, Sentencia Notificación, a las págs. 1-9 del apéndice. El dictamen desestimó la demanda sobre cumplimiento específico de contrato, y daños y perjuicios instada por los esposos Negrón Ayala contra Heriberto Ramos García, entonces demandado (el “apelado” o Ramos García), y declaró Con Lugar la reconvención presentada por éste. En consecuencia, el Tribunal condenó a los esposos Negrón Ayala a satisfacer a Ramos García $85,000.00 por concepto de inversión en unas estructuras y $18,900.00 en concepto de renta, más los gastos y costas sin honorarios de abogado.
El 12 de febrero de 2000, los esposos Negrón Ayala presentaron una Solicitud de Enmiendas o Determinaciones Iniciales o Adicionales en Virtud de la Regla 43.3 de Procedimiento Civil. Apelación, Solicitud, a las págs. 10-21 del apéndice. Por su parte, el 22 de febrero de 2000, Ramos García presentó una Moción en Oposición a Determinaciones Adicionales de Hechos. Apelación, Oposición, a las págs. 22-23 del apéndice. El Hon. José A. Ramos Aponte, magistrado distinto al que emitió la sentencia, declaró No Ha Lugar la solicitud de enmiendas y por consiguiente Ha Lugar la oposición a dicha solicitud. Apelación, Orden, a la pág. 24 del apéndice.
Por su parte, Ramos García presentó Oposición a la Apelación. Solicitó la desestimación del recurso por razón de que los esposos Negrón Ayala no cumplieron con las disposiciones de la Regla 15 de nuestro Reglamento, es decir, por no haber presentado la moción certificando la notificación a este Foro dentro de las cuarenta y ocho (48) horas siguientes a su presentación. Los esposos Negrón Ayala se opusieron a la desestimación expresando sus razones, luego de lo cual, Ramos García se reiteró en su solicitud de desestimación. Por último, los esposos Negrón Ayala replicaron, luego de lo cual mediante “Resolución” del 4 de octubre del 2000, declaramos “No Ha Lugar” la solicitud de desestimación de Ramos García. Luego de otros trámites, dimos por aprobada la Exposición Narrativa de la Prueba presentada por los apelantes ante el Tribunal [Regla 20 (D) de nuestro Reglamento], habida cuenta del incumplimiento del apelado para acreditar ante este Foro su cumplimiento con la Regla 20 (C) del referido Reglamento y ordenamos su elevación.
Posteriormente, los apelantes presentaron alegato suplementario. Regla 21 de nuestro Reglamento. Por su parte, el apelado hizo lo propio. Regla 22 de nuestro Reglamento. Con el beneficio de los escritos, de la Exposición Narrativa de la Prueba y de la Sentencia apelada, resolvemos, no sin antes exponer, en lo pertinente, el trasfondo fáctico y procesal acaecido ante el Tribunal.
II
El 22 de julio de 1994, los apelantes, esposos Negrón-Ayala, representados por los Ledos. Melvin W. Robles Sanabria y Daniel A. Rivera Hernández, presentaron demanda contra el apelado ante el extinto Tribunal de Distrito, Subsección de Distrito, Sala de Adjuntas, sobre “Cumplimiento Específico de Contrato y Daños y Perjuicios”, Caso Civil Núm. CD94-260. Alegaron, en síntesis, que el 1ro. de febrero de 1994, compraron un solar de aproximadamente 1,5000 metros cuadrados en el sector Los Lirios del Municipio de Adjuntas; que para esa misma fecha hicieron saber al apelado (Ramos García) que no continuarían con el contrato de *1120 arrendamiento que éste había efectuado con la anterior dueña, Iris Crizeta Cardona Monroig c/t/c Iris Cardona de Vega (Cardona Monroig), arrendamiento vencido desde el 1989 renovándose mes a mes a virtud de la tácita reconducción. Argüyeron, que: a) como parte del contrato de arrendamiento, ya vencido, los contratantes pactaron que toda estructura que el arrendatario constmyera en el inmueble arrendado, pasaría a ser propiedad del arrendador al vencer el contrato, sin pagar éste suma alguna de dinero; b) que vencido el contrato de arrendamiento en el 1989, Ramos García había estado cobrando alquiler a otros subarrendatarios por una porción del solar, por unas estructuras construidas en la propiedad arrendada, por un total de setecientos setenta y cinco ($775) al mes, en su peijuicio y en violación a los términos del contrato de arrendamiento que prohibía el subarrendamiento; c) que le solicitó a Ramos García que cumpliera con los términos del contrato y le entregara la posesión de su propiedad y se abstuviera de cobrar los cánones de arrendamiento que nó le pertenecían, negándose a ello. Solicitaron del Tribunal, le reconociera como dueño de la estructura construida por Ramos García en la propiedad arrendada, se le ordenare a éste cumplir específicamente con los términos del contrato, no interferir con la propiedad arrendada, indemnizarlos en una suma no menor de $10,000 por los daños y pérdidas sufridas, la imposición de costas, gastos y honorarios de abogado en una-suma no menor de. $3,000. Apelación, Demanda, a la pág. 25 del apéndice.
El 24 de septiembre de 1994, Ramos García, el único emplazado, representado por el Ledo. Pedro Malavet Vega, contestó la demanda negando la procedencia de la acción y reconvencionó. Señaló, entre otros-, que: a) Domingo Salcedo (Salcedo) operaba un negocio en el solar objeto de la demanda arrendado el 9 de enero de 1986, a Cardona Monroig, anterior dueña del terreno; b) que Salcedo y él visitaron la residencia de Cardona Monroig y ésta acordó la continuación y extensión del contrato de arrendamiento; c) que puso al día la renta que Salcedo tenía atrasada, e informó a la arrendadora, Cardona Monroig, su intención de construir en el solar arrendado, recibiendo su autorización; d) que, además, fue autorizado por Cardona Monroig a subarrendar y que los apelantes conocían que el negocio existente en el solar era de su propiedad; y e) que éstos conocían qúé el había subarrendado parte de la propiedad arrendada.
Siguió señalando Ramos García que: a) realizó construcciones y mejoras en el inmueble arrendado por una suma en exceso de los cuarenta y cinco mil dólares ($45,000); b) que Salcedo acordó con él la venta de su-negocio y la cesión del contrato de arrendamiento, el cual tenía renta atrasada por cerca de $1,000; c) que subarrendó parte de la propiedad arrendada y las mejoras por él realizadas, a Marcelino Santa Trinidad, qüiéh hacía negocios bajo el nombre de Liberty Video por un canon mensual de $275 y ótra parte de la misñia propiedad y mejoras por él realizadas a Jesús Ramos Puente, quien hacía negocios bajo el nombre de La Terraza Tropical, por un canon mensual de $500; d) hecho conocido por Cardona Monroig, la anterior dueña y por el nuevo adquirente (los apelantes), quienes se comunicaron con los subarrendatarios y les informaron que habían comprado la propiedad y no tenían que pagar arrendamiento a Ramos García y sí al nuevo dueño (los apelantes); e) que éstos se han apropiado ilegalmente de los cánones de subarrendamiento adeudados desde febrero de 1994, que a él le pertenecen; f) que se han apropiado ilegalmente de propiedad mueble e inmueble de su pertenencia, ocasionándole daños que" estima en por lo menos $50,000.00; g) que el- -arréñdattiiéntó continuaba vigente, pues ningún tribunal había determinado su terminación; y h) que los apelantes habían sido debidamente notificados de las circunstancias del caso por su abogado y por él, e insistían en su conducta, lo que constituía una temeraria que justificaba la imposición de honorarios de abogado por una suma no menor de $15,000. Apelación, Contestación a la Demanda y Reconvención, a las págs. 26-28 del apéndice.
El 4 de octubre de 1994, los apelantes contestaron la reconvención, negando todas las aseveraciones allí contenidas, levantando varias defensas, entre ellas, que la reconvención no aducía hechos que justificaran la conseción de un remedio. Apelación, Réplica a Reconvención, a la pág. 29 del apéndice. El 5 de octubre de 1995, los apelantes solicitaron se dictara sentencia sumaria parcial desestimando la reconvención del apelado y con lugar su demanda, reconociendo a ellos como dueños de la estructura construida por el apelado en su propiedad, adquirida de Cardona Monroig mediante la Escritura Número 14 sobre Compraventa otorgada en Mayagüez, Puerto Rico, el 1ro de febrero de 1994. Acompañaron en apoyo a su- solicitud varios documentos, : entre éstos, la mencionada escritura; Certificación Registral de la Propiedad; declaration jurada de la parte
*1121 demandante; Contrato de Arrendamiento otorgado entre Cardona Monroig y Domingo Salcedo; e Interrogatorio y Contestación a Interrogatorio de la demandada. Apelación, Solicitud de Sentencia Sumaria Parcial, a las págs. 30-61 del apéndice. Por su parte, Ramos García (el apelado) presentó oposición a la sentencia sumaria de los apelantes. Apelación, Moción en Oposición a Sentencia Sumaria, a las págs. 62-69 del apéndice. Así las cosas, el 31 de mayo de 1996, el Tribunal dictó una Resolución Interlocutoria y Orden señalando que luego de ponderar las alegaciones de los apelantes y del apelado, así como la prueba documental presentada, los apelantes habían establecido un derecho real de dominio sobre la propiedad en controversia con las garantías reales que ofrece el contrato de compraventa y la protección registral. Mientras que el apelado, a su juicio, no había traído al pleito a una parte que podría serle responsable en contexto de responsabilidad personal. Apelación, Resolución..., a la pág. 70 del apéndice.
Oportunamente, el apelado presentó una moción de reconsideración y vista, y determinaciones adicionales de hechos, así como celebración de vista. Mediante resolución de 2 de julio de 1996, el Tribunal la declaró No Ha Lugar, por razón de que no se había dictado una sentencia sumaria y sí una resolución. Apelación, Moción de Reconsideración y Vista, Moción Sobre Determinación de Hechos Bajo las Reglas 36.4 y 43.3, a las págs. 71-78 del apéndice. El 7 de julio de 1996, el apelado presentó una segunda moción de reconsideración.
El 24 de septiembre de 1996, el apelado acudió ante este Tribunal solicitando la expedición de un auto de certiorari (KLCE-96-00779), a los fines de revisar la referida resolución. Al analizar los autos, el 28 de enero de 1997, el Panel integrado por su presidenta, Juez Señora Rivera de Martínez, y los Jueces Cabán Castro y Rivera Pérez (Ponente), expidieron el auto solicitado y modificaron la resolución recurrida, a los efectos de aclarar que el hecho material incontrovertido sobre la existencia de un derecho real de dominio, de los aquí apelantes, se limitaba al terreno.
Así modificada, se devolvió el caso al foro de instancia para que señalare bajo la Regla 36.4 de Procedimiento Civil, cuáles de los hechos señalados en la moción de sentencia sumaria presentada por los apelantes, estaban sustancialmente controvertidos, además del ya señalado.
Luego de otros incidentes, la vista en sus méritos se celebró los días 24 y 26 de febrero de 1999. Se presentó abundante prueba documental, generalmente estipulada, y testifical. Desfilada toda la prueba, el Tribunal emitió la sentencia que hoy revisamos. Inconforme, los apelantes hacen los siguientes señalamientos:

“1. Incidió la Honorable Sala apelada al determinar, sin base en la prueba desfilada, que el señor Edwin Hernán Rivera Vélez había edificado en el solar con el consentimiento de la propietaria.

2. Erró la Honorable Sala de Instancia al determinar que conforme lo contratado entre la propietaria anterior del solar, Iris Crizeta Cardona, y el arrendatario original, Domingo Salcedo Rodríguez, existía un negocio en marcha funcionando como restaurante o cafetería en el solar.

3. Erró la Honorable Sala apelada al determinar como probado el hecho de que la propietaria del solar consintió como nuevo arrendatario al demandado y le autorizó a edificar, subarrendar y retirar de la propiedad toda construcción.

4. Erró la Honorable Sala de Instancia al determinar como válido el documento titulado convenio por el cual tanto el señor Domingo Salcedo como el demandado violaban, a sabiendas, todo lo contratado con la señora Iris Crizeta Cardona, propietaria anterior.

5. La sentencia emitida por la Honorable Sala Apelada no constituye el balance más racional, jurídico y justiciero de la prueba que tuvo ante sí el tribunal. ”

*1122 III
De entrada, es menester señalar-que todos los señalamientos, básicamente, atacan la evaluación y suficiencia de la prueba efectuada por el Tribunal. Por consiguiente, vale reiterar, la norma trillada en nuestra jurisdicción de que la apreciación de la prueba efectuada por el tribunal sentenciador gozará de gran respeto y deferencia, ya que éste tiene la oportunidad de ver y observar a los testigos mientras deponen, sus gestos, dudas y contradicciones. A partir de ello, es un principio cardinal que los foros apelativos no intervendrán con dicha apreciación, a menos que exista error manifiesto o que el tribunal haya actuado movido por prejuicio, parcialidad o pasión. Al respecto, el Tribunal Supremo expresó en Benitez Guzmán v. García Merced, 126 D.P.R. 302, 308 (1990):
“Se impone un respeto a la aquilatación de la credibilidad del foro primario en consideración a que 'sólo tenemos... récords mudos e inexpresivos'. Esas apreciaciones deben ser objeto de gran deferencia en ausencia de circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto que nos mueva a intervenir.” [Citas omitidas].
Véase, además, Méndez v. Morales, 142 D.P.R. 26, 36 (1996); Rivera Pérez v. Cruz Corchado, 119 D.P.R. 8, 14 (1987); Ramos Acosta v. Caparra Dairy, Inc., 113 D.P.R. 357, 365 (1982). Claro está, tales determinaciones no son inmutables, pues el arbitrio del juzgador, aunque respetable y merecedor de deferencia, no es absoluto. La apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de un tribunal apelativo. Véanse Méndez v. Morales, supra; Rivera Pérez v. Cruz Corchado, supra. Además, en relación con la apreciación de la prueba documental, estamos en las mismas condiciones que el Tribunal de Instancia. Caribbean Petroleum Co. v. Depto. de Hacienda, 134 D.P.R. 861, 880 (1993); Díaz García v. Aponte Aponte, 125 D.P.R. 1, 13-14 (1989); Ortiz v. Cruz Pagan, 103 D.P.R. 939, 947-948 (1975).
Los apelantes alegan, como primer error, que el Tribunal no recibió prueba alguna a los efectos de poder determinar que el testigo Edwin Hernán Rivera Vélez (Titín) edificó una estructura en el terreno arrendado, y que al éste declarar que vendió el negocio, debe entenderse por negocio, la llave o derecho de entrada al negocio. Entendemos que no se cometió el error. Veamos.
Surge de la Exposición Narrativa de la Prueba, que el testigo Rivera Vélez declaró haberle vendido a Domingo Salcedo una estructura la cual ocupaba un negocio llamado Rancho en la Playita localizado en el predio de terreno que adquirieron, posteriormente, los apelantes. Éstos últimos, no nos han presentado prueba alguna que refute el justo título que tenía Rivera Vélez para vender y traspasar dicha estructura y de que sean los dueños de las estructuras allí edificadas.
Como hemos señalado, un hermano panel de este Tribunal, por voz del hoy Juez Asociado del Tribunal Supremo de Puerto Rico, Hon. Efraín Rivera Pérez, mediante sentencia de 28 de enero de 1997, en el caso alfanumérico KLCE-96-00779, determinó que los apelantes eran acreedores solamente de un derecho real de dominio sobre el terreno donde están ubicadas las estructuras en controversia. Por ende, no debemos intervenir con la apreciación de la prueba del foro sentenciador al respecto.
En cuanto al segundo señalamiento, los apelantes arguyen que erró el Tribunal al determinar que existía un negocio en marcha funcionando como restaurante o cafetería en el solar, según pactado por la dueña anterior, Cardona Monroig, con el arrendatario original Domingo Salcedo. Le asiste la razón. Nos explicamos.
A pesar de que se cuestiona el hecho de que existía un negocio en marcha, el argumento principal de los apelantes para atacar el segundo señalamiento de error, es que el Tribunal admitió una declaración del apelado siendo prueba de referencia, ya que trató de aseverar una manifestación hecha extrajudicialmente por la propietaria anterior Cardona Monroig, sin que ésta hubiese testificado. La declaración iba dirigida a establecer que Cardona Monroig autorizó al apelado a subarrendar, a pesar de que se prohibía, expresamente, el subarrendamiento sin consentimiento de la arrendadora. En consecuencia, esta discusión se atenderá al *1123 considerar el tercer y cuarto señalamiento de error por estar íntimamente relacionados.
Con respecto a los señalamientos tercero y cuarto, los apelantes objetan la determinación del Tribunal: a) de dar como un hecho probado que Cardona Monroig permitió al apelado Ramos García como nuevo arrendatario, a quien autorizó a edificar, subarrendar y retirar de la propiedad toda construcción. Es decir, el Tribunal modificó un previo contrato escrito con el sólo testimonio de Ramos García, sin haber tenido el beneficio del testimonio de Cardona Monroig, una de las partes contratantes, y sobre la oportuna objección de los apelantes. Veamos.
La novación de un contrato, según el parecer de un sector mayoritario, se clasifica en dos especies: extintiva y modificativa. Como apunta Sancho Rebullida “cuando la voluntad no se manifiesta expresamente referida a la extinción y no hay incompatibilidad entre las dos obligaciones, debe entenderse que las partes han querido modificar simplemente la obligación y que ésta, por tanto, modificada, subsiste.” La Novación de las Obligaciones, Ediciones Nauta, S.A. Barcelona, 1964, pág. 204. Conforme lo anterior, la novación meramente modificativa permite la coexistencia de dos obligaciones sucesivamente contraídas. Aunque ello es una cuestión de intención, la misma “debe inferirse de las circunstancias que rodean cada caso en particular. ” Véase, Warner Lambert Co. v. Tribunal Superior, 101 D.P.R. 378, 389 (1973); Constructora Bauza v. García López, 129 D.P.R. 579, 599. Ello es así, pues la novación nunca se presume, sino que ha de ser acreditada sin género alguno de duda. Warner Lambert Co. v. Tribunal Superior, supra.
El elemento de la voluntad de las partes resulta ser lo determinante para que surja la novación. Constructora Bauza, Inc., supra, a la pág. 598. En el ejercicio de determinar la verdadera intención de las partes como medio de determinar la voluntad y poder fijar el alcance de las obligaciones contractuales, los actos anteriores, coetáneos y posteriores, al igual que la conducta total de los contratantes resultan ser relevantes. Marina Ind. Inc. v. Brown Boveri Corporation, 114 D.P.R. 64 (1983); José Garriga, Hijo, Inc. v. Condominio Marbella del Caribe Oeste y otros, 143 D.P.R. 927 (1997). De otra parte, es sabido que existe un contrato cuando concurren: 1) el consentimiento de los contratantes, 2) un objeto cierto que sea materia de contrato, y 3) una causa de la obligación establecida. Colegio Internacional Sek de Puerto Rico, Inc. v. Escribá, 135 D.P.R. 647 (1994). Así pues, salvo que la ley requiera una formalidad especial, un contrato verbal es tan válido como uno escrito. Aunque claro está, ello implica que su existencia y términos estarán sujetos a la credibilidad que le merezcan al Tribunal los testigos que sobre su existencia declaren.
Por otra parte, según el artículo 1157 del Código Civil, 31 L.P.R.A. § 3241, la modificación de un contrato puede darse bajo las siguientes circunstancias:

“Variando su objeto o sus condiciones principales.

(2) Substituyendo la persona del deudor.

(3) Subrogando a un tercero en los derechos del acreedor. ”

Con respecto al efecto de la figura de la novación extintiva, el Código Civil exige que los contratantes hayan declarado terminantemente que desean extinguir su anterior obligación y sustituirla por una nueva, o que la antigua y la nueva obligación sean de todo punto, incompatibles. Artículo 1158 del Código Civil, 31 L.P.R.A. § 3242. León Parra v. Gerardino, 58 D.P.R. 489, 496 (1941).
El primer criterio establecido en el artículo 1158, supra, para determinar cuándo una obligación queda extinguida, no representa mayores inconvenientes, por cuanto se trata de la voluntad expresa de las partes. Sin embargo, cuando las partes no han expresado su deseo de sustituir una obligación por otra, es necesario entonces evaluar si en efecto existe incompatibilidad entre la antigua y la nueva obligación. Según la jurisprudencia, para ello es “necesario inferir la voluntad novatoria examinando la naturaleza de las *1124 obligaciones y las circunstancias que rodean los acuerdos de las partes G. & J. Inc. v. Doré Rice Mill Inc., 108 D.P.R. 89, 91 (1978). Según Warner Lambert Co., supra, a la pág. 393, “la incompatibilidad a la que se refiere el Código es a la absoluta, a la excluyente de todo punto”. No existe tal incompatibilidad cuando se trata de obligaciones perfectamente armonizables. Es necesario que se trate de alteraciones esenciales contenidas en la obligación, es decir, que exista una variación en las condiciones principales.
En el caso de autos, como bien alegan los apelantes, no se produjo ante el Tribunal prueba suficiente (oral o documental) que en unión a la declaración del apelado, constituyera un elemento de convicción sobre la existencia del alegado acuerdo verbal entre la propietaria anterior Cardona Monroig y el apelado Ramos García. No habiendo comparecido al juicio Cardona Monroig, cualquier manifestación hecha por ésta constituía prueba inadmisible por tratarse de prueba de referencia. Regla 61 de Evidencia, 32 L.P.R.A. Ap. IV. Concluimos, que el contrato original no fue objeto de novación alguna y sí de tácita reconducción.
Si el arrendamiento se ha hecho por tiempo determinado, concluye el día prefijado sin necesidad de requerimiento. Artículo 1455 del Código Civil, 31 L.P.R.A. § 4062. Si al terminar el contrato permanece el arrendatario disfrutando quince (15) días de la cosa arrendada con aquiescencia del arrendador, se entiende que ; hay tácita reconducción por el tiempo que establecen las secciones 4083 y 4092, a menos que haya precedido requerimiento.
El contrato de arrendamiento que se genera en virtud de la tácita reconducción estará sujeto a las mismas condiciones del contrato original y por un término de duración variable, de conformidad con los artículos 1467 y 1471, 31 L.P.R.A. § 4083 y 4092. En casos de tácita reconducción en predios urbanos, dispone el Código Civil que “si no se hubiese fijado el plazo al arrendamiento, se entiende hecho por años cuando se ha fijado un alquiler anual, por meses cuando es mensual, por días cuando es diario.” Artículo 1471, § 4092, Código Civil, supra. Según Manresa, las relaciones jurídicas creadas por la tácita reconducción se regirán por lo pactado en el contrato que a la reconducción da lugar; lo cual implica que el contrato no ha concluido, que no ha dejado de existir, que sigue surtiendo todos sus efectos y siguen rigiendo todas sus cláusulas y condiciones, excepto la referente al tiempo de su duración que, por consentimiento tácito, queda prorrogado. León Parra v. Gerardino, ■ supra, a la pág. 495. Así pues, como indicamos anteriormente, para que una obligación quede extinguida por otra que la sustituya, es preciso que así se declare terminantemente, o que la antigua y la nueva sean de todo punto, incompatibles. Artículo 1158 § 3242 del Código civil, supra.
En el caso de autos, las consecuencias de esta determinación son varias. El contrato original estaba vigente al momento de la venta del inmueble a los apelantes. Por otro lado, el comprador de una finca arrendada tiene derecho a que termine el arriendo vigente al verificarse la venta, salvo pacto en contrario y lo dispuesto en la Ley Hipotecaria. 31 L.P.R.A. § 4068. Celebrado un contrato de arrendamiento en virtud de documento, sin pacto de respetar la posesión del arrendatario en caso de venta, dicho contrato tiene el carácter de personal y aun 1 en el supuesto de que el comprador de la finca arrendada tuviera conocimiento de la existencia del mismo, esto ; no altera su naturaleza y el arrendatario está obligado a desalojar la finca si así lo exige el comprador. Sosa v. Río Grande Agrícola Co., Ltd., 17 D.P.R. 1149 (1911). i
En la segunda nota aclaratoria de la Escritura Número 14 Sobre Compraventa (página 14), la parte compradora, es decir, los apelantes, reconocieron la existencia en el inmueble objeto de la transacción de dos inquilinos (Félix Soto y Heriberto Ramos) que ocupaban dos locales en el inmueble. En dicha cláusula, los ¡ compradores, es decir, los apelantes, acordaron liberar de responsabilidad a la vendedora Cardona Monroig por j la situación jurídica de aquellos inquilinos. A nuestro juicio, reconocer la existencia de inquilinos en un ! inmueble no equivale a un pacto para reconocer la permanencia de éstos en el inmueble luego de la venta. ; Luego de que los compradores, es decir, los apelantes, adquirieron el inmueble el 1ro. de febrero de 1994, le ; notificaron a Ramos García el 10 de marzo de 1994, que el contrato de arrendamiento no sería renovado a partir ; del 1ro. de junio de 1994. Por lo cual, los apelantes recibieron las rentas devengadas en dicho lapso de tiempo. ■ !
*1125 Nuestro Tribunal Supremo ha señalado que el comprador de un solar arrendado acepta y ratifica el arrendamiento entre el antiguo dueño y los arrendatarios, al avisar a éstos para que en lo sucesivo le paguen a él los cánones. Palermo v. Corte, 58 D.P.R. 189 (1941). El pacto celebrado entre la antigua dueña, es decir, Cardona Monroig, y Salcedo, disponía que toda construcción o mejora realizada a la estructura existente quedaría a beneficio de la arrendadora, sin que ésta tuviera que efectuar pago alguno al finalizar la vigencia del contrato. El contrato señalaba además que se prohibía el subarriendo del local arrendado sin el consentimiento escrito de la arrendadora.
Puesto que no podemos considerar los efectos que pudiera haber tenido el alegado contrato verbal novatorio, en ausencia de prueba satisfactoria a esos efectos, forzoso es concluir que conforme al contrato escrito celebrado entre Cardona Monroig y Salcedo el 9 de enero de 1986, Salcedo no tenía autoridad para subarrendar ni para ceder el contrato de arrendamiento a un tercero sin el consentimiento escrito de Cardona Monroig.
Los derechos que tiene el arrendatario se circunscriben, en cuanto a las mejoras útiles y voluntarias, a los concedidos al usufructuario. 31 L.P.R.A. § 4070. El arrendatario que haga en los bienes objeto del arrendamiento mejoras útiles o de recreo, no tiene por ello derecho a indemnización y sí a retirarlas si fuere posible sin detrimento de los bienes. Marchancl v. Montes, 78 D.P.R. 131, 138-139 (1955). Salcedo no podía otorgarle a Ramos García más derechos de los que él tenía en el inmueble arrendado. El arrendatario de una finca vendida por su arrendador que se crea con derecho a las mejoras por él realizadas antes de la venta, debe ejercitar su acción contra su antiguo propietario y no contra el nuevo adquirente, a menos que éste haya asumido la obligación de abonarlas. Díaz v. Cancel, 61 D.P.R. 888, 896 (1943). Los compradores del inmueble, es decir, los apelantes, liberaron a la vendedora Cardona Monroig de cualquier responsabilidad que ella pudiera tener ante los detentadores del inmueble. El contrato entre la arrendadora y el arrendatario era claro en cuanto al destino que sufrirían las mejoras. Por lo tanto, los compradores (los apelantes), no podían ser responsables ante el arrendatario por concepto de las mejoras realizadas, ya que la parte vendedora nunca se responsabilizaría por éstas en virtud del contrato al que estaban sujetos las partes.
A la luz de lo anterior, Ramos García debió reducir a escrito la alegada novación de la obligación anterior, cosa que no hizo, y no probó su existencia satisfactoriamente, de modo que hoy pudiéramos sostener que tuvo la concurrencia de novar la obligación original. Esto lo dejó sin causa de acción y en clara obligación ante la reclamación de los apelantes. En consecuencia, la discusión del quinto señalamiento de error se tomó en académica.
En consideración a lo expuesto, revocamos la sentencia apelada que desestimó la demanda instada por los esposos Negrón Ayala y declaró Con Lugar la reconvención presentada por el apelado Ramos García, y se desestima la misma. En consecuencia, se declara con lugar la demanda presentada por los esposos Negrón Ayala. Se devuelve el caso al Tribunal de Primera Instancia, Subsección de Distrito, Sala de Adjuntas, para la continuación de los procedimientos conforme a lo determinado.
Lo acordó el Tribunal y lo certifica la Secretaria General.
Aida I. Oquendo Graulau
Secretaria General
ESCOLIO 2002 DTA 71
1. Dicho artículo se lee como sigue:

“Para que una obligación quede extinguida por otra que la sustituya, es preciso que así se declare terminantemente, o que la antigua y la nueva sean de todo punto incompatibles. ”